**William Charles WATKINS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 42585.**

Court of Criminal Appeals of Texas.

Feb. 25, 1970.

Rehearing Denied April 8, 1970.

Stanley Rentz, Waco, for appellant.

Martin D. Eichelberger, Dist. Atty., Frank M. Fitzpatrick, Jr., and Kenneth H. Crow, Asst. Dist. Attys., Waco, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

WOODLEY, Presiding Judge.

The offense is robbery with firearms; the punishment,. forty-five years.

The indictment alleged the robbery of William George Dawson on or about the 15th day of October, 1968.

Trial was on February 4, 1969.

The first four grounds of error complain of the overruling of appellant's motion to suppress the in-court identification by the complaining witness Dawson, the reasons being: (1) Appellant was caused to confront the witness for identification purposes without the assistance of counsel.

(2) The prosecution failed to prove that the in-court identification was not tainted by the pre-trial identification, but was of independent origin.

(3) The state failed to prove by clear and convincing proof that the in-court identification was not the fruit of the witness' earlier identification made in the absence of intelligent waiver of counsel.

(4) The defendant had not received his statutory warning as required by Art. 15.17 Vernon's Ann.C.C.P. prior to his confrontation with the witness Dawson.

The record reflects that three young Negro men entered the Texas Hotel in Waco and at pistol point robbed the night clerk, William George Dawson, taking $15.-00 from the cash drawer and taking the complainant's billfold containing $20.25, a check on the Texas Hotel payable to Dawson, and other items including identification cards.

Also one of the robbers took complainant's watch and took a club made from a pool cue, which was kept behind the counter, after striking the complaining witness on the head with it.

At the trial the complaining witness identified appellant as the robber who pointed a pistol at him, threatened to kill him, de-

manded the keys to the cash drawer and took his billfold from his pocket. He testified that he recognized appellant as he walked in the front door of the hotel and also recognized one of the other robbers, the two having been in the hotel some four weeks before.

The only testimony elicited at the trial before the jury concerning complainant's identifying appellant as one of the robbers when he was returned to the hotel following his arrest was on his cross-examination by appellant's counsel.

The record reflects that there was a lapse of less than an hour from the robbery to this identification of appellant by the victim.

At the pre-trial hearing on appellant's motion to suppress Police Officer Johnson testified that he received a call at approximately 3:05 A.M. on the date in question, proceeded a half block to the Texas Hotel and questioned the complainant. He immediately broadcast the information the complainant gave him over his police radio.

Police Officer Harwell testified that he heard both broadcasts and within not more than two minutes after the second he spotted what he believed to be the suspects. After a temporary delay in getting his car started, he pursued and stopped the vehicle appellant, wearing blue coveralls, was driving.

After the arrest he placed appellant and the other two occupants of the car he had stopped in the patrol car and drove to the Texas Hotel. He went in and talked to the complainant who identified his billfold and other items taken in the robbery which had been found in the vehicle appellant was driving. The complainant told him the club was missing and Officer Harwell went to the patrol car and got it and brought it in and the complainant identified it. When the officer went back to the patrol car the complainant followed him outside and upon seeing appellant said: "That is one of them that robbed me—the one that held the gun on me."

Though differing in details, the testimony of the complainant elicited by the defense at the trial was to the same effect.

The information broadcast by police radio did not include the name of the person who had been robbed, only that there had been a robbery at the Texas Hotel, followed by a description of two of the robbers, one wearing blue coveralls and the other wearing a black hat.

■ We find no merit in the contention that the court erred in overruling appellant's motion to suppress the in-court identification by the complainant.

While it is true that appellant was wearing blue coveralls and was handcuffed when complainant identified him outside the hotel, and the complainant had already identified his billfold, Texaco Credit Card and check, and the club which had been taken in the robbery and had been shown to him by Officer Harwell who had recovered them from the car appellant was driving, the record reflects no suggestive confrontation.

We find no violation of the rule announced in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. The in-court identification was shown to be of independent origin and no denial of due process is shown. See Elliott v. State, Tex.Cr.App., 444 S.W.2d 914; Bates v. United States, 132 U.S.App.D.C. 36, 405 F.2d 1104; Jackson v. United States, 134 U.S.App.D.C. 18, 412 F.2d 149.

Willie Dee Wright was called by the defense and testified that on the night in question appellant picked him up and took him home. When he "saw the law" he got out of the car and started running and he left a billfold and a check in the car.

On his cross-examination Willie Dee testified that he hit the complainant with the pistol found in the car and took his billfold and that he had on blue coveralls

and that Jimmy and Bobby, whose last names he did not know, were with him and that appellant was not, and that Jimmy took the money out of the cash register.

Willie Khoury, practicing attorney in McLennan County and court appointed counsel for Willie Dee Wright, was called by the state in rebuttal. His testimony that Willie Dee had told the prosecuting attorney in his presence that his confession implicating appellant and others in the robbery was true and that he would testify to what was in the statement was admitted for the limited purpose of impeachment.

Ground of error No. 5 complains that the court erred in allowing State's Witness Khoury to testify as to contents of Willie Dee's confession "because said testimony went outside the bounds of impeachment testimony and was hearsay."

Ground of error No. 6 complains that the court erred in allowing State's Witness Khoury to testify as to impressions Willie Dee, his client, gave concerning the veracity of the statement allegedly made by Willie Dee Wright because said impressions were hearsay.

■ The confession of Willie Dee Wright was admitted in evidence as an exhibit after proof was offered as to its voluntariness and admissibility and no complaint is made as to its admission for the sole purpose of impeachment. In view of this testimony, grounds of error Nos. 5 and 6 reflect no reversible error.

■ The remaining ground of error complains that the court erred in allowing Officer Oliver Chambers to testify as to appellant's police record at the Waco Police Department during the punishment phase of the trial.

This ground of error relates to the cross-examination of a state's witness who had testified that appellant's general reputation for being a peaceful and law abiding citizen was bad, as reflected by the following:

"Q. So the only conclusion you have about his reputation in the past is just what * * * uh is just actually on the basis of those two dealings with him, one where you release him and the other where he signed a confession?

"A. Well I've had occasion to read his police record. He had a long record.

"Q. But that's not what somebody * *

"MR. CROW: All right, let him answer the question Your Honor.

"MR. RENTZ: I object your Honor. I don't believe he can testify to anything he's read on a record * * *

"MR. CROW: You asked the question.

"MR. RENTZ: I didn't ask him what he had read on * * *

"COURT: Uh, I'll overrule the objection. Go ahead with your answer officer.

"A. I read the records in the Police Department there, and he had been arrested several times for shoplifting * * *

"Q. Uh, we don't need anything about what you read off the record Your Honor, I mean Mr. Chambers, the only thing we want to know is what you have heard in talking to other people, not what you have read. We don't know whether those records down there are true and accurate.

"MR. FITZPATRICK: Well, now we object to that Your Honor. I don't think he has the right to impugn the Police Department's records since they're sitting here at the counsel table.

"COURT: Well, I'm not going to allow him to go any further with that testimony."

In the absence of a motion to withdraw the testimony or for mistrial, no reversible error is shown.

The judgment is affirmed.

MORRISON, J., not participating.