Calvin Troyce DOBY, Appellant,

v.

The STATE of Texas, Appellee.

No. 42825.

Court of Criminal Appeals of Texas.

June 24, 1970.

Nelson S. Hargrove, Jerry P. Payne, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Erwin G. Ernst, Asst. Dist. Attys., Houston, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

The conviction is for robbery by assault; the punishment, enhanced under Article 62, Vernon's Ann.P.C., was assessed by the jury at life.

It was alleged in the indictment that John W. Moore had the care, control and custody of the money that was taken. The proof shows that two men robbed the Homestead State Bank in Houston of some $34,000. A well prepared summary of the pertinent facts as contained in the State's brief (omitting references to page numbers) is as follows:

"The robbers entered the bank about 1:30 p. m. that day. There were two men, both masked, wearing ladies hose over their faces. Each was armed. The smaller robber had a bag and revolver and went to the first cage and leaped over the counter. The larger man had a sawed-off shotgun. He told everyone to keep their places and no one would be hurt.

"The smaller man removed $34,000 in currency from four tellers' areas, taking it at pistol point. By reason of the manner of Mr. Moore's fear for his own life as well as the lives of the bank employees, he had given instructions if they were held up to turn over the money. As they left, the larger man said, 'That's all, folks.'

"C. H. Baldridge entered the bank just as the robbers left, Jimmy Stewart, who worked at K-Mart across the street from the bank, saw the robbers before the crime was committed, across the street from the bank at a Dairy Queen stand

facing toward the shopping·center, which included the bank. Mrs. Jones, Mrs. Barron, Mrs. Dielefeldt and Mrs. Simms were all tellers at the bank. Mrs. Campbell worked in the note section. Appellant was identified as the larger of the two robbers. Mrs. Connie LeClere, a customer at the bank, saw the robbers through a bank window as they approached the bank on the outside. At that time they were not wearing masks and Appellant, Mr. Doby, had a shotgun in his hand. Patricia Goodrum, an employee of the bank, saw defendant as he got into the car, taking off his mask, so that she saw him without the mask after the robbery. She saw him at a distance of about forty feet and she positively identified him as a robber.

"Charles Baldridge, a customer, was approaching the bank as a customer. He saw Appellant Doby come out of the bank. Doby did not have a mask on when Baldridge saw him from a distance of about twenty feet. Appellant had a short-barrel shotgun in his hands. Baldridge saw the robbers get in their car and drive away. They drove east on Parker Road and then, on the next street, turned north.

"Walter James Stewart testified that he worked at K-Mart Foods in a shopping center near the bank. He identified Appellant as the man he saw when he, the witness, was at the Dairy Queen across the street from the shopping center and across the street from the bank exit. He saw Appellant get out of a white 1962 Pontiac, walk across in front of the witness, and get into a 1968 Impala. Another man in a 1964 Tempest also got out of his car and got in the Impala with Doby and a third man. All three men drove off in a northerly direction in the Impala, leaving the Tempest and the Pontiac parked there. This was about 12:30 p. m., an hour before the robbery.

"Birdie Jones, one of the employees of the bank at the time of the robbery, whose

customer at the time of the robbery was Mrs. LeClere, said Mrs. LeClere said to her just before the robbery: 'Oh girl, you are fixing to be robbed.' Mrs. Jones looked up and saw two men, one with a mask over his face and the other with a mask around his forehead, and she was looking straight at him. She identified Appellant as the man who did not have a mask over his face.

"Doris Frances Campbell testified that she also was employed at the Homestead Bank at the time of the robbery. She heard a strange noise and looked up and saw a man at Mrs. Jones' window, taking her money. He was on the inside of the window. She looked around to see if there were others and saw a man standing near a pot plant, holding a sawed-off double barrel shotgun. She did not see either of the men with their masks off. She testified that Appellant Doby had the same general overall description as the man with the shotgun.

"Blanche Barron testified that she was an employee of the Homestead Bank and was present when it was robbed. She was one of the tellers who was robbed and the man who was getting the money pushed her out of the way with his gun. She saw the other man at the far end of the bank with a shotgun. She did not get a look at this man without the mask on his face. She testified that the man's general build and height favored Mr. Doby, Appellant. They had the same general size and appearance.

"John Moore testified on cross-examination that his testimony about voices and walks was an opinion from observation. On direct examination he testified that the way Appellant walked and carried himself as he entered the courtroom, a kind of shuffling walk, was the same walk he observed at the bank robbery on the part of the man in the bank who walked to the far side of the bank and took up his station with a shotgun. The witness also testified that Appellant was of similar general size and weight and build as the robber. Moore testified that he heard this robber speak twice, and was of the opinion that it was the same voice as that of Appellant, which he had heard in court.

"Maydelle Simms testified that she was working at the bank, on the day it was robbed, as a teller; that she never saw either of the robbers with their stocking masks off and that the general overall build of Appellant was the same as that of the robber who had the shotgun.

"Alma Dielefeldt testified that both robbers had on masks when she saw them and that Appellant had a general overall build of the one with the shotgun."

█ In the second ground of error, it is contended that the trial court erred in permitting the witnesses John W. Moore, Maydelle Simms and Alma Dielefeldt to testify as to similarities between the robber and appellant. In the third ground of error, it is contended that the court erred in permitting the witnesses Connie LeClere, Patricia Goodrum, Charles Baldridge, Doris Frances Campbell, Birdie Jones and Blanche Barron to make in-court identifications of appellant. It is contended that the testimony of each witness was tainted because a lineup was held when appellant had no counsel present.

The careful trial judge, in accordance with the suggestion in Martinez v. State, Tex.Cr.App., 437 S.W.2d 842, conducted a hearing on the motion to suppress their testimony because of the alleged taint resulting from the lineup. An officer testified that appellant orally waived presence of counsel at the lineup but refused to sign a written waiver. The court found that appellant did not knowingly and intelligently waive his right to have counsel present.

The court further found that the witnesses named under the second ground of error could not positively identify appellant who was wearing a mask at the time of the robbery, and they could not recognize a picture

of him a short time after the robbery. He concluded that the State had failed to establish by clear and convincing proof that an identification by either of them at the time of the trial would be free of taint. These witnesses did not identify the appellant in the courtroom when they testified, but were permitted to testify concerning similarities of one of the robbers and the appellant.

The trial judge made findings and conclusions concerning each witness who made an in-court identification complained of in the third ground of error. He found that each of the witnesses had an opportunity to observe the appellant without the mask just before, during or immediately after the robbery; that reasonably accurate descriptions of appellant were given immediately after the robbery; that no one suggested to the witnesses that appellant was one of the robbers.

The court made separate conclusions based upon the evidence of each prospective witness, and a typical conclusion is made concerning the identification by the witness Patricia Goodrum and is as follows:

"By clear and convincing evidence, the Court finds beyond a reasonable doubt that the testimony of this witness as to her present recognition and identification of the defendant as one of the persons she saw commit the robbery in question is based solely upon her observations on the occasion of the robbery in question; that her testimony in this regard is not tainted or in any way a product of her observations of the defendant at the time of the aforesaid line-up and that her testimony as to her present recognition and identification of the defendant is therefore admissible before the jury."

There is no showing that anything in the lineup was unnecessarily suggestive and conducive to misidentification as to deny appellant due process of law.

■ The trial court heard the witnesses and had sufficient facts to conclude that there was clear and convincing proof that the in-court identification was of independent origin. No abuse of discretion has been shown. See Thames v. State, Tex. Cr.App., 453 S.W.2d 495. On the record before us, the fact that appellant did not have counsel at the lineup was harmless error under Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284, and Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

The second and third grounds of error are overruled.

In the first ground of error, complaint is made because the trial court instructed the appellant and his counsel not to tell the jury that counsel was appointed. Appellant's counsel objected as follows:

"* * * I can't see whether a man has a court-appointed attorney or hired attorney whether it would go for the jury finding guilt or innocence. I can't see where a jury knowing a Defendant has a court-appointed attorney would be more likely to find not guilty. I can't see that the State will be placed in jeopardy, and if a man is a pauper I believe the jury should know."

■ The fact that an accused has appointed (or retained) counsel should make no difference in the trial of a criminal case and should not be given any weight by a jury.

■ No logical reason or authority has been presented to show that the trial court erred in so ruling. The first ground of error is overruled.

The judgment is affirmed.