Alejandro GARZA, Appellant,

v.

The STATE of Texas, Appellee.

No. 60426.

Court of Criminal Appeals of Texas, Panel 1.

March 25, 1981.

On Rehearing May 26, 1982.

Ernesto Acevedo, Jr., San Antonio, for appellant.

Bill M. White, Dist. Atty., Wayne Hampton, Teofilo C. Chapa and Anton Paul Hajek, III, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Alfred Walker, Asst. State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and ODOM, JJ.

## OPINION

ODOM, Judge.

This is an appeal from a conviction for attempted burglary. Punishment, enhanced by allegation and proof of two prior felony convictions, is life.

In his first ground of error appellant contends it was error for the trial court not to suppress the in-court identification by witnesses Rosado and Garcia. After a hearing on the motion to suppress, the trial court denied the motion, and subsequently both witnesses identified appellant before the jury as the individual they saw break a window of the premises where the burglary was attempted.

Our review of the testimony heard at the motion to suppress shows that Ms. Garcia heard glass breaking next door to where she lived. Ms. Rosado, whose residence was the object of the offense, was at Ms. Garcia's home at the time. Both ladies stepped outside and saw two forms on the porch of Rosado's house. They yelled at the two would-be burglars, asking what they were doing, whereupon the intruders walked from the scene. Ms. Garcia followed them a short distance to see what direction they were going, then returned to the house.

Within minutes the police arrived. The two witnesses gave a general description of

the persons they had seen: thin, not too tall and not too short, in their late teens or early twenties, both dressed in dark shirts, one in dark pants and the other in light pants. Two officers went in the direction that the witnesses had seen the offenders depart, while a third officer interviewed the witnesses at the scene. Within minutes appellant and his companion were stopped a few blocks from the scene because they matched the general description given by the witnesses, and were immediately returned to the scene for possible identification. Before they arrived at the scene, however, the officer told them that two suspects were being brought back, and asked them if they were sure about the age of· the suspects. Garcia testified they told the officer they could not say the age for sure because they did not get a clear view of the offenders and that they were unable to give a positive identification.

1. We here set out excerpts from the record that clearly demonstrate these facts. Rosado testified:

"Q. When did you first see Alejandro Garza?

"A. Well, I saw him when he was breaking the windows, but I didn't see his face, like I told you. Then the first time I saw his face was when they brought them back. I could see that they had the same clothes on.

"Q. So you don't know for a fact if Mr. Alejandro Garza did, in fact, break that window; is that right?

"A. Well, yes. I didn't see his face, like I told you. The first time I saw him, I just saw him from the back, and when he walked away, because both of them, they had their hands hanging like that when they walked away.

"Q. OK. Now when you first saw Alejandro Garza that night, where was he?

"A. The first time?

"Q. Yes.

"A. Breaking the windows.

"Q. Well, it could have been someone else with the same type of clothes; cculdn't it?

"A. I don't know.

"Q. Because you didn't see the face; did you?

"A. No, I didn't see the face. . . .

＊ ＊ ＊ ＊ ＊ ＊

"Q. OK. Now let me ask you this. You gave a description earlier. What was the description of the clothing you said you saw on two men?

When appellant and his companion were brought to the scene, Garcia and Rosado positively identified them as the persons they had seen attempting the burglary. They also testified, however, that they identified them on the basis of the clothing they were wearing, and admitted they had not been able to see their faces.

Each case must be judged on its own facts. *Sutton v. State*, Tex.Cr.App., 495 S.W.2d 912, 916. The record convinces us that Rosado and Garcia were not able to identify appellant at trial on the basis of their observations of the individuals at the time of the offense. At best the evidence shows that when appellant was brought to the scene of the offense, he was identified on the basis of the clothing he was wearing, and that any identification in court was on the basis of the witnesses' observations of him after his arrest, and not at the time of the offense.[1]

"A. One had white pants and a dark shirt, and the other one had dark pants and a dark shirt.

"Q. OK, and you are sure about that now?

"A. Yes.

"Q. OK, let me ask you this. Did you, yourself, give any physical description to the officers?

"A. All I did was I told them how they were dressed, and that they looked slim.

＊ ＊ ＊ ＊ ＊ ＊

"Q. OK. Now is your identification based upon the fact that the police officers brought Mr. Garza back and Mr. Honeycutt back to the scene for you to get another look at them?

"A. Well, they brought them back for us to look at them.

"Q. And is your identification based upon that fact, that that's who you are claiming they were, the men, when they were brought back to you?

"A. All I can tell you is the men they brought back had the same description, clothing, we gave them.

"Q. OK, but you honestly can't say they were the same two men that were at the window?

"A. Because I couldn't see their faces very well.

"Q. OK, but they had similar clothing? That's all you are saying; is that correct?

"A. Yes.

"Q. But your identification at the scene is based upon—

"A. Their clothing.

Although it is true that the fact that a witness is not positive of his identification goes to the weight of his testimony, not to its admissibility, *Valenciano v. State*, Tex. Cr.App., 511 S.W.2d 297, this case does not present an incident in which less than positive identification was introduced. In her testimony before the jury Ms. Rosado was positive that appellant was one of the men she saw committing the offense:

"Q. Can you positively tell us whether or not Mr. Garza was, in fact, standing by that window at 416 E. Carson?

"A. Yes, he was, and the other man, too, both holding onto the window, and glass falling on the ground. That's when I hollered at them to stop breaking those windows, that I lived there."

Despite the uncertainty of the identification demonstrated earlier in this opinion, the trial court denied the motion to suppress the in-court identification of appellant, and permitted Rosado to make this positive identification. The positive identification of appellant as the person seen committing the offense was patently unreliable, as demonstrated by the witness' testimony at the hearing on the motion to suppress, and it should not have been admitted.

We hold it was reversible error to deny the motion to suppress, to admit the in-court identification.

The judgment is reversed and the cause remanded.

Before the Court en banc.

## OPINION ON STATE'S MOTION FOR REHEARING

DALLY, Judge.

This is an appeal from a conviction for the offense of attempted burglary. The punishment, enhanced by two prior felony convictions, is life imprisonment.

"Q. The two gentlemen being brought back by the police officers; is that correct? Could you answer that?

"A. Well, they brought the same men with the same description we gave them, of clothing.

\* \* \* \* \* \*

Q. OK. In other words, you are saying, 'These are the same two men I saw,' you told

In the panel opinion on original submission the appellant's judgment of conviction was reversed because of the trial court's failure to suppress the identification testimony of two witnesses, Josephine Rosado and Theresa Garcia. The panel opinion held that the in-court identification of the appellant by Rosado and Garcia was based upon their observations of the appellant after his arrest and was patently unreliable.

In the panel opinion it was noted that the witnesses observed two men breaking a window at an apartment building. They were unable to observe their faces but were able to see their clothing and their general physical characteristics. Rosado yelled at the pair and the two men walked off and Rosado and Garcia briefly followed them to see in which direction they went. The police arrived approximately five to ten minutes later and were given a description of the men and the direction they headed. The appellant and a companion were apprehended a few blocks away and they consented to return to the scene. The police returned with the pair approximately twenty-five minutes from when Rosado first saw the two men. Rosado and Garcia at that time identified the pair as the two men they saw breaking the window. At trial Rosado and Garcia, after a hearing on the appellant's motion to suppress, testified as to their identification of the appellant at the scene and identified the appellant as the man the police had brought back.

The State in its motion for rehearing requests that we reconsider our original opinion and their motion. Because of the issues raised, a restatement of the constitutional principles involved is required.

■ The Supreme Court in its trilogy of *United States v. Wade*, 388 U.S. 218, 87

the officers, just based solely on the clothing, that it was similar?

"A. The same clothes and the same description I gave them, that they looked slim.

"Q. OK. Based upon the two men being brought back by the officers; right?

"A. Uh huh."

S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); and *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) expressed its concern about the effect of pretrial identification procedures upon eyewitnesses' subsequent trial testimony. As a result of this concern the Court in *Wade* created a right to counsel at pretrial confrontations. If that right was violated the witness could not make an in-court identification unless it was shown that the identification had an origin independent of the confrontation. In *Gilbert* the Supreme Court stated that if the pretrial confrontation was in violation of the defendant's right to counsel, testimony about the confrontation was inadmissible. The sanctions of *Wade—Gilbert* were restricted to in-person confrontations, *United States v. Ash*, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973) that occur after the initiation of adversary judicial criminal proceedings, *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). In the case at bar, the appellant's right to counsel was not violated since formal criminal proceedings had not been initiated. *Kirby v. Illinois*, supra; *Wyatt v. State*, 566 S.W.2d 596 (Tex.Cr.App.1978); *Beaupre v. State*, 526 S.W.2d 811 (Tex.Cr.App.1975), cert. denied 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975); *Garcia v. State*, 626 S.W.2d 46 (Tex.Cr.App.1981).

▆ In the present case the issue raised is whether the appellant was denied due process of law. *Stovall*, the remaining opinion of the Supreme Court's trilogy, stated that a pretrial confrontation could be "so unnecessarily suggestive and conducive to irreparable mistaken identification" that it would deny an accused due process of law. The Court while noting that one man showups were widely condemned held that a claimed violation of due process in the conduct of a confrontation depends upon the totality of the circumstances surrounding it. Indeed, the admission of evidence of a one man showup without more does not violate due process. *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In *Stovall* the Supreme Court concluded

that in the facts of that case the one man showup was "imperative." The victim of a stabbing was in the hospital and it was unclear how long she might live when the confrontation was arranged. The police, needing to take immediate action to identify the attacker and knowing that only the victim could exonerate the accused, followed the only possible procedure.

▆ Similarly in the case at bar we believe that under the totality of the circumstances the confrontation was not unnecessarily suggestive and conducive to irreparable misidentification. While it must be conceded that an on-the-scene confrontation has some degree of suggestiveness, in many situations its use is necessary. First of all by viewing the alleged perpetrator of the offense immediately after the commission of the offense, the witness is allowed to test his recollection while his memory is still fresh and accurate. See *United States v. Coades*, 549 F.2d 1303 (9th Cir. 1977). Additionally the quick confirmation or denial of identification expedites the release of innocent suspects. See *Stidham v. Commonwealth of Kentucky*, 444 S.W.2d 110 (1969). Thus the innocent suspect need not be transported to jail and detained until a lineup can be constructed. See *Stewart v. United States*, 418 F.2d 1110 (D.C.Cir.1969). Furthermore the police would be able to release the innocent suspect and continue their search for the criminal while he is still within the area and before the criminal can substantially alter his looks and dispose of evidence of the crime. See *People v. McMath*, 45 Ill.2d 33, 256 N.E.2d 835 (1970); *Frank v. Blackburn*, 605 F.2d 910 (5th Cir. 1979) vacated in part 646 F.2d 873. Finally, any possible prejudice resulting from such a confrontation can be exposed by rigorous cross-examination of the witness. See *People v. Johnson*, 59 Mich.App. 187, 229 N.W.2d 372 (1975).

▆ We also believe that Rosado's and Garcia's identification of the appellant was sufficiently reliable so as to be admissible. The Supreme Court in *Neil v. Biggers*, supra and *Mason v. Brathwaite*, 432 U.S. 98,

98 S.Ct. 2243, 53 L.Ed.2d 140 (1977) held that even if an identification procedure is suggestive and unnecessary, the admission of identification testimony does not violate due process so long as the identification possesses sufficient aspects of reliability. The Court reiterated that the totality of the circumstances must be reviewed and that various factors should be considered. Among those factors are: (1) the opportunity to view, (2) the degree of attention, (3) the accuracy of the description, (4) the witness' level of certainty, (5) the time between the crime and the confrontation. In the present case the witnesses were able to view the appellant from only ten yards away and were able to briefly follow the two men. Each witness appears to have been highly attentive but each was only able to give the police a general description. However, both witnesses were quite certain when the suspects were shown to them at the scene and it must be remembered that less than one-half hour had transpired from when the offense occurred and when the confrontation occurred. We must conclude that under the circumstances of this case there was not a very substantial likelihood of irreparable mis-identification.

▮ It is true that the witnesses were not able to view the facial features of the appellant at the time of the offense and that their identification of the appellant is less than certain. However, such matters go to the weight to be given the evidence and not to its admissibility. *Valenciano v. State,* 511 S.W.2d 297 (Tex.Cr.App.1974); *Martinez v. State,* 507 S.W.2d 223 (Tex.Cr.App.1974). Furthermore, while the panel opinion notes that each witness gave a positive in-court identification, it cannot be argued that the jury was mislead by such identification. The record reflects that the jury was aware of the basis for the witnesses' identification. During the trial before the jury Rosado testified in part as follows: [1]

"Q. And can you describe them?

"A. Well, I saw them, and their clothes, I saw their clothes, only I didn't see their faces. One had a white pair of pants with a dark shirt, and the other one had dark pants and a dark shirt.

\*    \*    \*    \*    \*    \*

"Q. You say you started following the men when they were walking away; is that correct?

"A. Uh, huh. We followed them to take a look at them. The only thing I could do was to look at the clothes, because I didn't see their faces, because they were facing—going that way (indicating), and I told Theresa, I said, 'Let's not follow them. Let the police take care of them, because ...

\*    \*    \*    \*    \*    \*

"Q. And what description did you give?

"A. Well, that I had seen a dark and a lighter man, and the dark man was wearing dark pants, dark shirt, and the other one was wearing white pants and a dark shirt.

"Q. Did you give any description as to their height or their physical appearances?

"A. Yes. I told them that they was kind of slim men.

"Q. Did you give any type of description as to their possible age?

"A. No. By the way, I looked at them from the back. I thought they were younger men.

"Q. What led you to believe they were younger men.

"A. Because they looked slim and small when I saw them, and I thought they were younger men, because I didn't see their faces, see, I just saw them to the back and saw the kind of clothes they were wearing, and I didn't see their face, but they were going that way. It was from the back that I saw them.

\*    \*    \*    \*    \*    \*

---

1. The portion of testimony quoted in the panel opinion occurred during the motion to suppress the testimony.

"Q. They brought back two men?

"A. The men, yes, and we gave them the description of their clothes, their build, and when they brought them back, they asked us if those were the men. I told them, yes, because they fit the description we gave them, the same build and the same clothes.

\* \* \* \* \* \*

"Q. Were you able to make any type of identification at that time?

"A. Yes. They asked me, and they had the same pants, the same description of clothing, and the same build.

\* \* \* \* \* \*

"Q. Do you see in this courtroom an Alejandro Garza?

"A. I think this is the man, but he was wearing a—something (indicating). I don't know what you call it, but like a beard down here (indicating.)

\* \* \* \* \* \*

"A. That's him right there (indicating). To me, that's him, because I noticed him from a distance. The only thing I can see was his dark clothes, the same description that I gave the officer, and I noticed that he had that little thing here (indicating). I don't know what they call it.

\* \* \* \* \* \*

"Q. Can you positively tell us whether or not Mr. Garza was, in fact, standing by that window at 416 E. Carson?

"A. Yes, he was, and the other man, too, both holding onto the window, and glass falling on the ground. That's when I hollered at them to stop breaking those windows, that I lived there.

"Q. Did you see his face?

"A. I saw him sideways, and when I saw—I got close enough to see the clothing. I couldn't very well see the face, and I didn't see his face until they were brought back, because they were—it was dark, you know. It was already dark, and I saw what kind of clothing they had when they turned around like that. They had their heads down, but I described them by their build and by their clothes.

"Q. So your identification of him then is based on his clothing and his build when you saw him again?

"A. Yes, then when he was brought back."

Garcia's testimony was substantially the same as Rosado's.

The jury had before it all the relevant information concerning their identification of the appellant and it was the jury's duty to determine the credibility of their testimony and to decide the weight to be given to their testimony. The Supreme Court in *Watkins v. Sowders*, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981) acknowledged that in cases in which identification evidence has been admitted, the jury's only duty will often be to assess the reliability of that evidence. Additionally, the Court stated in *Brathwaite*:

"We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury's mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature."

In the case at bar the jury had before it evidence of how the witnesses made the identification of the appellant. It was for the jury to decide whether it was credible and the weight it would be given. Furthermore, it should be remembered that the jury was not without other direct evidence. The witnesses saw the two men break and handle the glass; the appellant's fingerprints were on that glass. We, therefore, conclude that the trial court did not err in overruling the appellant's motion to suppress. The State's Motion for Rehearing is granted and we now address the appellant's other two grounds of error.

■ In his second ground of error the appellant contends that the prosecutor erred when he misstated the law during the closing argument at the guilt-innocence phase of the trial. The following occurred:

"[PROSECUTOR]: It says, 'The act of breaking and entering a habitation at nighttime raises a presumption that it is done with the intent to commit theft or steal.'

"Now this is a legal presumption. It also goes along with common, everyday sense. If somebody is breaking into somebody else's house, there has got to be some intent and purpose behind it, and the law says that it is presumed he's there to steal. Now that shifts the burden as to that presumption to the Defense, and they have got to disprove that he was there to steal if he wasn't.

"[DEFENSE COUNSEL]: I'm going to object to that, Your Honor. We don't have to prove anything in this case.

"THE COURT: Ladies and gentlemen, you are to recall that I told you it's up to the State to prove the Defendant's guilt beyond a reasonable doubt by competent evidence. Of course, the Defendant does not have to prove his innocence.

"Please proceed.

"[DEFENSE COUNSEL]: I'm going to move for a mistrial on the basis that that comment makes us have to go forward with a defense.

"THE COURT: I just finished explaining to the jury that the Defendant does not have to do anything. The Defendant may remain silent. His silence may not be considered as any evidence of guilt. It's up to the State to prove his guilt by competent evidence beyond a reasonable doubt. The Defendant doesn't have to do anything.

"[DEFENSE COUNSEL]: You are overruling my Motion?

"THE COURT: I am.

"[PROSECUTOR]: You can read the burden, and you can read the presumption, for yourselves."

We believe that the trial court's prompt instructions to the jury were sufficient to protect the rights of the appellant. *Banks v. State*, 503 S.W.2d 582 (Tex.Cr.App.1974); *Guerra v. State*, 478 S.W.2d 483 (Tex.Cr. App.1972). This ground of error is overruled.

■ In the remaining ground of error the appellant asserts that the prosecutor's remarks about the appellant's failure to call the co-defendant as a witness were improper jury argument. During the jury argument the following transpired:

"Now if the Defense had a defense to this, Honeycutt would be in here telling you what it was. They would have had another witness in here to say, 'Hey, man, this guy didn't do it. He was just with me,' or 'He saw it happen and walked up and told me to leave,' or something like that.

"[DEFENSE COUNSEL]: I'll object to that, Your Honor, I can't force a co-Defendant in here, or force him to testify. I can subpoena him, but I can't force him to testify and Counsel for the State knows that. I object to his telling them I can bring him in and have Honeycutt say Mr. Garza didn't take part in this.

"THE COURT: Ladies and gentlemen of the jury, you are reminded that any party can subpoena an individual whether that individual testifies, whether it's Mr. Honeycutt or anybody else. It will depend upon the individual."

The appellant concedes that the issue has already been decided adversely against him in *Winkle v. State*, 506 S.W.2d 891 (Tex.Cr. App.1974), cert. denied 419 U.S. 843, 95 S.Ct. 75, 42 L.Ed.2d 71 (1974). We are not persuaded by the appellant's argument to overturn our previous decisions.

Additionally, we note that the remarks were invited by the appellant's closing argument:

"[DEFENSE COUNSEL]: Now I tried to ask those women did they see any particular people breaking this window. Now the State came in and said, 'Well, we have Mr. Garza's fingerprint on a pane of glass.' That may be true, but we don't know what he was doing there with

Honeycutt. I can't call Honeycutt. He's a co-Defendant.

"[PROSECUTOR]: Your Honor, I object to Defense Counsel going outside the record. He has the right to subpoena Honeycutt and have him in this courtroom today to testify, just like the State does.

"THE COURT: Ladies and gentlemen, I inform you that either side may have subpoenaed any witness they may have desired.

"Please proceed."

The ground of error is overruled.

The appellant has filed a pro se brief. After a careful review of the contentions raised, we conclude that they are without merit.

The State's motion for rehearing is granted and the judgment is affirmed.

ONION, Presiding Judge, concurring.

I wholeheartedly concur in the majority opinion on State's Motion for Rehearing. Since, however, only federal and out-of-state cases are cited for approval of a one-on-one confrontation between a suspect and a witness occurring shortly after the commission of a crime usually at, on or near the scene of the offense, I would hasten to add that this court has considered that question and related issues on numerous occasions. See, e.g., *Elliott v. State*, 444 S.W.2d 914 (Tex.Cr.App.1969); *Watkins v. State*, 452 S.W.2d 444 (Tex.Cr.App.1970); *Perryman v. State*, 470 S.W.2d 703 (Tex.Cr.App.1971) (Concurring Opinion); *Garcia v. State*, 472 S.W.2d 784 (Tex.Cr.App.1971); *Cole v. State*, 474 S.W.2d 696 (Tex.Cr.App.1971); *Piper v. State*, 484 S.W.2d 776 (Tex.Cr.App. 1972); *Writt v. State*, 541 S.W.2d 424 (Tex. Cr.App.1976); *Archie v. State*, 615 S.W.2d 762 (Tex.Cr.App.1981). See also *Garcia v. State*, 626 S.W.2d 46 (Tex.Cr.App.1981); *Ellingsworth v. State*, 487 S.W.2d 108 (Tex. Cr.App.1972); *Waffer v. State*, 500 S.W.2d 659 (Tex.Cr.App.1973); *Pilcher v. State*, 503 S.W.2d 547 (Tex.Cr.App.1974).

I concur.

McCORMICK, Judge, concurring.

Both the majority and dissenting opinion, as well as the original panel opinion, deal with an issue that is not present in the case before us. A reading of the testimony of Ms. Rosado fails to reveal a positive identification of appellant as the person who attempted to enter the residence. I fail to perceive how an in-court identification can be tainted when there was no identification made.

The sum and substance of the testimony was that the in-court "identification" of appellant was to identify him as the person arrested by the police on the night in question. As the State maintains in its Motion for Rehearing, Ms. Rosado did not make a positive in-court identification. I quote approvingly from the State's Brief:

"This case should not be confused with all of those 'impermissibly suggestive pre-trial procedures' cases where the positive in-court identification of the defendant as a perpetrator of the crime on trial is tainted. See *Coleman v. State*, 505 S.W.2d 878; cf. *Demouchette v. State*, 591 S.W.2d 488, and *Doescher v. State*, 578 S.W.2d 385. There was no such in-court identification in this case.

"*Doby v. State*, 455 S.W.2d 278, addresses the issue in the instant case. There, the State had some nine 'identification' witnesses, all of whom had apparently viewed the defendant in a lineup. The robbers were wearing masks at the time of the robbery; and, as to three of the 'identification' witnesses, the trial court found that they could not positively identify the defendant who was wearing a mask at the time of the robbery and concluded that an identification by either of those three 'identification' witnesses would not be free of taint. Therefore, these three witnesses were not permitted to identify the defendant as one of the robbers. They were, however, permitted to '... testify concerning similarities of one of the robbers and the appellant.' For instance, one of the witnesses, Dielefeldt, was allowed to testify that one of the masked robbers had a shotgun and that he had the same 'general overall build'

as the defendant. This Court endorsed the trial court's rulings.

"*Doby* stands firmly for the proposition that, as long as the witness does not undertake to render an in-court identification of the defendant as being the one who committed the crime on trial, it is permissible for that witness to testify as to any characteristics which the offender and the defendant had in common. That is all Ms. Rosado did in the instant case. She did not make an 'in-court identification.'

"As a matter of fact, although the words 'identification' and 'identify' are loosely tossed about, this record reveals that Ms. Rosado never, *at anytime, even to the police,* positively identified this appellant as one of the offenders. *All she ever did was to state the similarities concerning the appellant and one of the offenders.* She made it plain to everybody from the time of the offense until the close of the trial that she couldn't positively identify this appellant.

"The inability of a witness to be positive of his identification goes to the weight of the testimony and not the admissibility. *Valenciano v. State,* 511 S.W.2d 297; *Martinez v. State,* 507 S.W.2d 223; and that is what the instant case is all about." [Emphasis in original.]

One additional factor not considered in the other opinions is the fact that the jury in the case at bar was charged on the law of circumstantial evidence. Had the testimony of Ms. Rosado been interpreted by the trial officials as a positive identification of appellant as the perpetrator of the crime, then it would logically follow that the charge on circumstantial evidence would not have been given.

My reading of the testimony is consistent with the position of the State and the trial officials that there was no "positive in-court identification" and therefore there is nothing to taint. Such objection goes to the weight and not the admissibility of the testimony, and the court's charge sufficiently protected the appellant's rights.

For these reasons, I concur in the affirmance of the conviction.

ODOM, Judge, dissenting.

The majority opinion takes a position on the admissibility of the in-court identification that is so weak that the State was not even willing to raise it in the motion for rehearing. The State argued that the witness did not make a positive identification of appellant as the person who committed the offense,[1] yet conceded that if a positive identification had been made, it "might well have been tainted."

The majority opinion ignores the fact that the witness herself in effect admitted that her identification was based on the post-arrest confrontation, not on her recognition of appellant during the commission of the offense.[2] To conclude that the in-court identification was not tainted, the majority must ignore these admissions of the identifying witness.

For these reasons, I must dissent.

ROBERTS and TEAGUE, JJ., join this opinion.

CLINTON, Judge, dissenting.

"The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification. [footnote omitted] Mr. Justice Frankfurter once said: 'What is the worth of identification testimony even when uncontradicted? The identification of strangers is preverbially untrustworthy. The hazards of such testimony are established by a formidable number of instances in the records of English and American trials. These instances are recent—not due to the brutalities of ancient criminal procedure.' The Case of Sacco and Vanzetti 30 (1927). A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been *the de-*

---

1. The record refutes this assertion, as demonstrated in the panel opinion on original submission.

2. See testimony in footnote 1 of the panel opinion.

*gree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification.* \* \* \* And the dangers for the suspect are particularly grave when the witness' opportunity for observation was insubstantial, and thus his *susceptibility to suggestion* the greatest." [1]

*United States v. Wade,* 388 U.S. 218, 228–229, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

With those truisms in mind, I join Judge Odom in his dissenting opinion, for it is clear enough that the incourt identification of appellant by the two witnesses was based on his being presented to them by peace officers in the manner about which there is no dispute. But for certain statements in the majority opinion and the expression of wholehearted concurrence with "approval of a one-on-one confrontation" in a concurring opinion, I would be content with the sound reasons given by Judge Odom for dissenting.

In *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) implicitly approved was the proposition that "the practice of showing suspects singly to persons for the purpose of identification ... has been widely condemned," and properly so, *id.,* U.S. at 302.[2] In *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) —a pre-*Stovall* "showup" seven months after the offense—and *Manson v. Braithwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)—a single photograph viewed two days later—identification was tested by *Biggers* factors, which are outlined by the

majority in this instant case. However, the Supreme Court has not withdrawn its aversion to the confrontation practice addressed in *Stovall.*[3] Rather, to the extent it applies, *Manson v. Braithwaite,* supra, has shifted the focus of the due process analysis to "reliability ... in determining the admissibility of identification testimony," so that the *Biggers* factors are weighed against "the corrupting effect of the suggestive identification itself," *Manson, id.,* U.S. at 114, 97 S.Ct. at 2253. The import of *Manson* lies not in any material conceptual change, but in the analytical approach to be taken in determining claims such as appellant raises here.

Accordingly, I would not apply here the questionable proposition concerning the confrontation practice reviewed in *Stovall* that is restated in the majority opinion: "in many situations its use is necessary." The testimony of the identification witnesses in the case at bar belies the notion that "the witness is allowed to test his recollection while his memory is still fresh and accurate," for all they had in mind were clothing and physical build. There was neither "the quick confirmation [nor] denial of identification" of appellant, yet he was not released in order that investigating officers "continue their search for the criminal." Finally, exposure of possible prejudice "by rigorous cross-examination of the witness" is of no avail when the issue is, as here, admissibility *vel non* of identification testimony.[4]

1. All emphasis is mine throughout unless otherwise indicated.

2. The Supreme Court did not fault the "immediate hospital confrontation" at issue because under the circumstances—the only eyewitness had just undergone surgery to save her life and it was not known how long she might live—the "one-on-one" confrontation was found to be "the only feasible procedure" and, as such, "imperative," *id.,* at 302, 87 S.Ct. at 1972.

3. Indeed, the *Manson* Court recognized the concern in *Stovall* and its two companion decisions was with respect to problems of eyewitness identification, *viz:*

"Usually the witness must testify about an encounter with a total stranger under circum-

stances of emergency or emotional stress. The witness' recollection of the stranger can be *distorted easily by* the circumstances of *later actions of the police.* Thus, *Wade* and its companion cases reflect the concern that the jury not hear eyewitness testimony unless that evidence has aspects of reliability." *Id.,* U.S. at 112, 97 S.Ct. at 2252.

4. In *Neil v. Biggers,* supra, opinion of the Court, delivered by Justice Powell, noted that both the confrontation at issue and the trial preceded *Stovall,* the decision in which was "when we first gave notice that suggestiveness of confrontation procedures was anything other than a matter to be argued to the jury."

To be contrasted with the facts of the situation outlined in the panel opinion [5] are those that ultimately weighed in favor of admitting the testimony of Trooper Glover, a "specially trained, assigned and experienced" undercover officer, in *Manson*.[6] Thus, the concern of the Supreme Court in *Stovall*, see note 3, *ante*, was not truly implicated in *Manson*.

Finally, since the issue is admissibility of testimony rather than its credibility and weight, I part company with the majority in its treatment of the "duty" of the jury to assess reliability of identification evidence.[7] Along its way to holding that a state criminal court is not constitutionally required by the Due Process Clause of the Fourteenth Amendment *in every case* to conduct an identification hearing out of the presence of the jury, *Watkins v. Sowders*, 449 U.S. 341, 345–349, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981), the Supreme Court made the observation to which the majority alludes in a context of pointing out the distinction between its rejection of "the usual presumption that a jury can be relied upon to determine issues according the trial judge's instructions," that gave rise to the constitutional requirement that a *Jackson v. Denno* hearing [8] be held to determine admissibility of a challenged confession, and an identification hearing. Thus it was written:

"Where identification evidence is at issue, however, no such special considerations justify a departure from the pre-

sumption that juries will follow *instructions*. It is the reliability of identification evidence that primarily determines its admissibility.... And the proper evaluation of evidence under *instructions of the trial judge* is the very task our system must assume juries can perform. Indeed, as the cases before us demonstrate, the *only* duty of a jury in cases in which the identification has been admitted will often be to assess the reliability of that evidence [emphasis in original]." *Id.*, at 347, 101 S.Ct. at 658.

Patently, the Supreme Court had reference to the fact that it had already accepted the finding of the Supreme Court of Kentucky in each case that there was no "impermissible suggestiveness" in *Watkins'* case, *id.*, at 344, 101 S.Ct. at 656, and "no semblance of impermissible suggestiveness" in Summitt's either, *id.*, at 345, 101 S.Ct. at 657. Thus, assessment of reliability was the "only duty" for the jury to discharge in finding guilt—following appropriate instructions from the trial court. However, again, the whole discussion was to differentiate the due process considerations in a *Jackson v. Denno* hearing, in order to find that while "such a determination may be constitutionally necessary" in some cases, "it does not follow that the Constitution requires a *per se* rule compelling such a procedure in every case," *id.*, at 349, 101 S.Ct. at 659.

In my judgment there is much mischief in upholding the manner of identifying a citi-

---

**5.** "Within minutes appellant and his companion were stopped a few blocks from the scene because they matched the general description given by the witnesses, and were immediately returned to the scene for possible identification. Before they arrived at the scene, however, the officer told them that two suspects were being brought back, and asked them if they were sure about the age of the suspects. Garcia testified they told the officer they could not say the age for sure because they did not get a clear view of the offenders..."

**6.** "[W]e find in the instant case little pressure on the witness to acquiesce in the suggestion that such a [single-photograph] display entails. D'Onofrio had left the photograph at Glover's office and was not present when Glover first viewed it two days after the event. There thus were little urgency and Glover could view the photograph at his leisure. And since Glover

examined the photograph alone, there was no coercive pressure of another. The identification was made in circumstances allowing care and reflection." *Id.*, U.S. at 116, 97 S.Ct. at 2254.

**7.** Though in the instant case the issue is whether the trial court erred in denying appellant's motion to suppress identification testimony on grounds it was tainted by the on site confrontation, I perceive that the extensive discussion by the majority of evidence admitted at trial and of the role of a jury as factfinder is but an early harbinger of the end of the *Martinez* identification hearing in Texas. See *Martinez v. State*, 437 S.W.2d 842, 847–848 (Tex.Cr.App.1969).

**8.** *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

zen that has been "widely condemned," and for the additional reasons set forth, as well as those given by Judge Odom, I must dissent.

