**Ismael Flores CRUZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–81–0112–CR.**

Court of Appeals of Texas,
Tyler.

Dec. 2, 1982.

Janet M. Seymour, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

McKAY, Justice.

Appellant was convicted of burglary upon a plea of not guilty. The jury assessed punishment, enhanced by a prior felony conviction, at 17 year's confinement.

In his sole ground of error, appellant asserts the trial court erred in overruling his motion to suppress identification testimony and admitting in-court identifications of appellant because such testimony was the result of a pretrial confrontation so unnecessarily suggestive and conducive to irreparable misidentification as to deny him due process of law.

The facts are these. Around 3:40 a.m. on September 9, 1979, Jo Belinda Pugh awoke in the upstairs bedroom of her mother's apartment to find a man she claimed was appellant standing a few feet away from her. She sat up and screamed for her mother, at which point the man tried to cover her mouth. During a short struggle, she screamed three times, after which the man released her and left the room. Jo's mother, Bobbye Jean Pugh, was standing at the foot of the stairs just inside the back door of the apartment, having been awakened by her daughter's screams. She testified that the man walked down the stairs, brushed past her, and went out the back door. Bobbye Jean went to call the police. Jo Belinda came downstairs and stood on the back porch to see where the man went, where she was soon joined by her mother. They lost sight of the man for a moment as he rounded the corner of their building, then he reappeared, trying to get into two other apartments, and finally went out of sight up a stairway between two apartments.

Jo Belinda's screams had also awakened some of her neighbors. In an apartment across the street from the rear of their apartment, Alice McCoy and her daughter Denise Cross heard the screams and went out onto their porch. They observed a Mexican man come out the back door of the Pugh's apartment. They too lost sight of him momentarily, but then saw the same man "messing with the windows" of two other apartments before ascending the stairs and disappearing from sight.

Carl Pugh, Jo Belinda's brother, lived in the apartment directly behind her's. He also heard her screams and ran out onto his porch. He claimed to have followed the man around the corner, and said he never lost sight of the man until he climbed the stairs. He watched those stairs until the police arrived and then pointed out where the man was hiding. After approaching the stairway, the officers observed appellant, whereupon they handcuffed him and returned him to the yard of the Pugh's apartment where the witnesses had gathered. The witnesses all identified appellant as the man they had seen, after being admonished by one of the officers to "be sure that he was the guy." Appellant was then placed under arrest.

Jo Belinda admitted she did not see the man's face while he was inside the apartment, although at trial she testified she had no doubt that appellant was that man. Likewise McCoy did not see his face until he was presented to her by the police for identification. Bobbye Jean testified that she glimpsed the side of appellant's face as he brushed past her at the foot of the stairs. Cross testified that she saw the man's face in the light of a street lamp outside the apartment. The witnesses each told the police officers that the man they saw was wearing a maroon shirt and dark pants and had long dark hair. This description matched that of appellant when he was apprehended. The witnesses all testified at trial that they were certain that appellant was the man they saw coming out of the apartment.

Appellant filed a pretrial motion to suppress any identification testimony by these witnesses, alleging that any such testimony would be tainted by the assertedly illegal on-the-scene identification conducted by the police. The trial court overruled the motion

after hearing. Then, as now, his argument was that since the witnesses had inadequate opportunity to view the man who broke into the apartment, the actions of the police in immediately exhibiting appellant to them at the scene were unreasonably suggestive and led to irreparable misidentification of appellant as the guilty party. After careful consideration, we overrule this ground of error.

■ Appellant admits at the outset of his brief that he was not entitled to assistance of counsel at the confrontation, since no formal charges had been filed. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Therefore, no right to counsel issue is involved on appeal.

■ The issue on this appeal is whether appellant was denied due process of law, under his allegation that the confrontation was unnecessarily suggestive and conducive to irreparable misidentification. This is a recognized ground of attack upon a conviction independent of any claim of right to counsel. *Stovall v. Denno*, 388 U.S. 293, 301–2, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). The Supreme Court in *Stovall*, after noting that one person showups were widely condemned, held that a claimed violation of due process in the conduct of a confrontation depends upon the "totality of the circumstances surrounding it." Furthermore, the admission of evidence of a one man showup, without more, does not violate due process. *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972).

The issue presented here was recently the subject of an extensive discussion in *Garza v. State*, 633 S.W.2d 508, 511–514 (Tex.Cr. App.1982, opinion on State's Motion for Rehearing). The court's analysis of the question there was twofold: first, conceding that any on-the-scene confrontation is to some degree suggestive, it must be determined whether the confrontation was *unnecessarily* suggestive; next, the totality of the circumstances must be examined using the factors set out in *Neil v. Biggers, supra*, to determine whether the identification by the witnesses possesses sufficient aspects of reliability so as to be admissible.

On the question of necessity, the court in *Garza* set out several reasons justifying confrontations in certain situations:

First of all by viewing the alleged perpetrator of the offense immediately after the commission of the offense, the witness is allowed to test his recollection while his memory is still fresh and accurate.... Additionally the quick confirmation or denial of identification expedites the release of innocent suspects.... Thus the innocent suspect need not be transported to jail and detained until a lineup can be constructed.... Furthermore the police would be able to release the innocent suspect and continue their search for the criminal while he is still within the area and before [he] can substantially alter his looks and dispose of evidence of the crime.... Finally, any possible prejudice resulting from such a confrontation can be exposed by rigorous cross-examination of the witness. *Garza, supra* at 512 (citations omitted).

We find these reasons equally applicable here. Not more than fifteen minutes had elapsed between the commission of the offense and the arrival of the police to apprehend the suspect. The witnesses virtually kept the alleged perpetrator under surveillance until the officers arrived. Some of the witnesses had not seen the man's face; however, they all agreed that he wore a maroon shirt, dark pants, and had long dark hair—aspects of his appearance which could have easily been altered in a short period of time. Furthermore, the record reflects that the witnesses were ably cross-examined by appellant both as to their opportunity to observe the perpetrator and the effect of the confrontation on their identification of appellant as the perpetrator, and the question was argued before the jury. Finally, from the record we cannot say that the conduct of the police during the confrontation was unduly suggestive. We therefore hold that the confrontation here was not *unnecessarily* suggestive.

■ We now turn to our analysis of the totality of the circumstances to determine whether the in-court identification by the

witnesses possesses sufficient aspects of reliability to be admissible notwithstanding the admittedly suggestive confrontation. The factors to be considered, as set out in *Neil v. Biggers, supra,* include: (1) the opportunity to view, (2) the degree of attention, (3) the accuracy of the description, (4) the witness' level of certainty, and (5) the time between the crime and the confrontation.

█ (1) *The opportunity to view.* Although Jo Belinda never saw the man's face, she testified that he was in her room for five minutes, and she also observed him after he left her apartment. Bobbye Jean got a brief but good look at the man's face only inches away as he passed her at the bottom of the stairway. The record reflects that the kitchen light was on and this light partially illuminated the place where she stood. Cross saw the man's face in the light of a street lamp as he left the apartment. McCoy also got a good look at the man in the glow of the street light, but could not see his face. Carl Pugh as well saw the man and followed him after he left the apartment.

(2) *The degree of attention.* These witnesses were not casual or passing observers; rather, they had been galvanized into action at the sound of Jo Belinda's screams. Their attention was riveted upon the door of her apartment by her final scream, "Mamma, someone is in the house." Having been so rudely awakened from a quiet sleep, the witnesses were intent on discovering the identity of the troublemaker.

(3) *The accuracy of the description.* Although most of the witnesses could give only a general description of the culprit, the facts they gave proved accurate. He was indeed a Mexican man, wearing a maroon shirt and dark pants. He did indeed have long dark hair. His bodily appearance was the same. He appeared calm and unhurried in his exit from the house and his actions thereafter; he exhibited a similar uncaring attitude after his apprehension, even dozing off in the police car.

(4) *The witness' level of certainty.* The witnesses were all certain that the man presented to them by the police was the same one they had earlier observed. In fact, Carl testified that appellant was identified by his family some yards away, while the police brought him down the sidewalk: "They said 'There he is,' and they were scared to go up there." The witness' in-court identifications of appellant were no less certain, although they all testified that his hair was shorter at trial.

(5) *The time between the crime and the confrontation.* As noted earlier, barely fifteen minutes elapsed between the crime and the confrontation, and even less time had passed since the witnesses lost sight of appellant up the stairway. Their mental impressions of appellant could hardly have been more fresh.

We therefore conclude that under all the circumstances of this case there was not a very substantial likelihood of irreparable misidentification. Short of that point, such evidence is for the jury to weigh. *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977). The Supreme Court continued:

> We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

As noted earlier, the record reflects the jury heard ample cross-examination of each witness, and the issue of identification was argued before them on final summation. The decisions involved in sifting and weighing such evidence were theirs and theirs alone. We therefore conclude that the trial court did not err in overruling appellant's motion to suppress or in admitting the identification testimony at trial.

The judgment of the trial court is affirmed.