**Derek CLARK, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 06–00–00003–CR.**

Court of Appeals of Texas,
Texarkana.

Submitted June 8, 2000.

Decided June 9, 2000.

474

Joe Martin, Law Offices of Joseph E. Martin, III, Lufkin, for appellant.

J. Dawn Armstrong, Asst. Dist. Atty., Clyde Herrington, Dist. Atty., Lufkin, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## O P I N I O N

Opinion by Chief Justice CORNELIUS.

Derek Clark was indicted for the aggravated sexual assault and aggravated kidnapping of Theresa Pruitt. A jury found Clark not guilty of all charges except the lesser included offense of kidnapping. At Clark's election, the trial court assessed punishment, which was set at ten years' imprisonment.

Clark contends that he is entitled to a reversal of his conviction because at trial a nonresponsive comment by the victim informed the jury that Clark was represented by an appointed attorney. Clark also contends that the evidence is factually insufficient to support his conviction for kidnapping. We overrule these contentions and affirm the judgment.

When Clark's attorney was cross-examining Pruitt, she stated that Clark told her that his attorney had been appointed. Clark's attorney objected to the nonresponsive comment. The trial court instructed the jury not to consider the remark, but overruled Clark's motion for a mistrial.

 It is not harmful error for the jury to know that the defendant has an appointed counsel, unless the prosecutor uses the fact to strike at the defendant over counsel's shoulders, or the information is calculated to suggest to the jury that the defendant is a sluggard who refuses to pay his own way even though he is able to do so. *See Wood v. State,* 511 S.W.2d 37 (Tex.Crim.App.1974); *Bray v. State,* 478 S.W.2d 89 (Tex.Crim.App.1972); *Land v. State,* 465 S.W.2d 153 (Tex.Crim. App.1971); *Doby v. State,* 455 S.W.2d 278 (Tex.Crim.App.1970). Neither was done in this case. There was no hint of any impropriety or lack of diligence on Clark's part. Moreover, when Clark's counsel objected, the trial court instructed the jury not to consider the matter. That was sufficient to cure any possible harm.

 Clark also contends that the evidence is factually insufficient to support his conviction for kidnapping. In conducting a factual sufficiency review, we view all of the evidence in a neutral light and determine whether the guilty verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996).

Clark and Pruitt, the victim, had a short-lived romantic relationship, but ended it some time in February 1999. On March 7, 1999, at about 7:30 in the morning, Pruitt was driving to work in her truck when Clark began following her in his vehicle. Pruitt pulled over to the side of the road to see what Clark wanted. Clark stopped behind Pruitt, walked to her truck, and pulled the keys out of the ignition through the open window on the driver's side. Pruitt protested vigorously and repeatedly, but Clark told her they had to talk, and he took her keys with him as he went and reparked his vehicle. Clark then returned to Pruitt's truck. He pushed Pruitt to the passenger's side, got in himself on the driver's side, and drove off down a farm-to-market road. As he was driving, Clark told Pruitt, "[Y]ou ruined my life. I'm going to ruin yours.... I hope you said good-bye [to] your kids." Pruitt testified that at this point she began to fear for her life.

As Clark continued to drive down the farm-to-market road, Pruitt begged him to pull over and get out so she could go to work. Clark ignored her requests and continued to drive. Pruitt tried several times to escape, but Clark pulled her back into the truck and pulled her seat belt tightly around her. Clark drove into a wooded area until Pruitt had no idea where they were. Eventually the truck got stuck in a mud hole. Clark ordered Pruitt out of the truck. She refused to get out, so Clark forcibly pulled her out. She began to run, but lost her breath and fell. Clark caught up with her, grabbed her hands, and pinned them behind her back. Pruitt was afraid that if she tried to run again Clark would break her legs. Nevertheless, she tried to run several more times, but Clark caught her each time and threw her down. On one occasion he threw her in a ditch, and on her last attempt to run he struck her in the face, knocking her unconscious. Pruitt, wounded and near hysteria, decided not to try any more escapes. She and Clark were quite a distance from her truck at that point, and she was afraid that if Clark abandoned her there she might never be found.

Pruitt and Clark then began walking toward the truck. Pruitt took a stick and wrote her name in the dirt, then dragged the stick to make a trail as they walked so if someone came looking for her, they could follow the trail. When they got to the truck, Pruitt took several Tylenol tab-

lets, thinking they would make her sick and that Clark would get scared and let her go. The tablets, however, only made her drowsy. They were unable to get the truck out of the mud, so they went to a nearby campsite, where there were some recreational trailers. Pruitt had trouble walking, so Clark carried her. When they arrived at the camp area, they went inside one of the trailers. Clark carried Pruitt inside, put her on a bed, and took her shoes in an apparent attempt to thwart any other escape attempt. Clark then returned to the truck to again try to get it out of the mud.

When Clark returned a short time later, Pruitt begged him to let her go. When he refused, she again tried to escape, but Clark blocked her from leaving, pushed her down on the bed, and said, "I'll make sure you don't leave." He then began tearing her clothes, and although she resisted, he sexually assaulted her.

After the assault, Pruitt found some clothes in the trailer. She put them on to replace her torn clothes. Clark and Pruitt then went to another trailer in the camp area. Pruitt lay down on a bed because she was in shock and was not feeling well. Clark returned to try to get the truck unstuck. A short time later, Pruitt heard a truck coming. She went to the door and saw a strange man and a boy in a white truck. She told them she had been raped and asked them to help her. The man called the police on his cell phone and then drove Pruitt to meet a sheriff's deputy. Pruitt was later taken to a hospital, where she was examined and treated.

The State's theory on the lesser included charge of kidnapping was that Clark abducted Pruitt by restraining her with the intent to prevent her liberation by secreting or holding her in a place where she was unlikely to be found. Tex. Pen.Code Ann. § 20.01 (Vernon Supp.2000), § 20.03 (Vernon 1994). Therefore, to sustain the conviction for kidnapping, the State was required to prove those allegations.

Clark contends that the evidence is factually insufficient to support his conviction for kidnapping, because the evidence shows that Pruitt had several opportunities to leave if she desired, he did not secrete or hold Pruitt in a place where she was not likely to be found, and Pruitt even directed some of the activities during the alleged abduction.

■ We find the evidence factually sufficient to support Clark's conviction for kidnapping. The fact that during a long seizure the victim may have had opportunities to try to escape but did not avail herself of them does not necessarily defeat a finding that she was kidnapped, if, during earlier portions of her seizure, she tried to escape but her attempts were foiled by the defendant's violence and threats. The victim's past failed attempts to escape and the fear resulting from the defendant's prior violence and threats may have caused her to decide that further attempts to escape would not only be futile, but would also be unwise and dangerous.

■■ Likewise, cooperation by a kidnap victim with her abductor does not defeat a finding that she was kidnapped. Like abandoning further attempts to escape, cooperation to some extent with one's abductor may be the "better part of valor" if the victim believes such cooperation is necessary to avoid death or serious bodily injury or further threats of injury. The jury is entitled to judge the reasonableness of the victim's conduct based on all the circumstances of the seizure.

■ A kidnapping becomes a completed offense when a restraint is effected and there is evidence that the actor intended to prevent liberation, and that he intended to prevent liberation by either secretion or deadly force. *Mason v. State,* 905 S.W.2d 570 (Tex.Crim.App.1995). The requirement of secreting the victim where she will likely not be found is a part of the *mens rea* of the offense, not the *actus reus.* Thus, if the actor intended at any

time during the restraint to secrete or hold the victim in a place where she is not likely to be found, the offense is complete. *Santellan v. State*, 939 S.W.2d 155, 162 (Tex. Crim.App.1997); *Mason v. State*, 905 S.W.2d at 575; *Ontiveros v. State*, 890 S.W.2d 919 (Tex.App.-El Paso 1994, no pet.). It is not necessary that the victim be held for any certain length of time. *Sanders v. State*, 605 S.W.2d 612, 614 (Tex. Crim.App. [Panel Op.] 1980). We find the evidence factually sufficient to support the jury's conclusion that Clark restrained Pruitt with the intent to secrete or hold her in a place where she would not likely be found.

Clark points to evidence that after the incident Pruitt met him at a motel room, telephoned him several times, and wrote him letters after he was incarcerated asking that he call her. Clark posits that this evidence undermines Pruitt's credibility. Pruitt, however, explained this evidence by stating that she met and talked to Clark only to help the law enforcement officers locate and arrest Clark. Nevertheless, even if Pruitt was friendly with Clark after the incident, that does not necessarily impugn her testimony about the circumstances of the abduction. Her testimony, if believed, is clearly sufficient to show the commission of the offense. The jury had the right to believe, and did believe, that testimony.

For the reasons stated, we affirm the judgment of the trial court.