Curley ARMSTEAD, Appellant,

v.

The STATE of Texas, Appellee.

No. 08–82–00242–CR.

Court of Appeals of Texas, El Paso.

Sept. 19, 1984.

Bob Parks, Monahans, for appellant.

Jack Louis McGowen, Dist. Atty., Pecos, for appellee.

Before STEPHEN F. PRESLAR, C.J., and WARD and OSBORN, JJ.

## OPINION

OSBORN, Justice.

Curley Armstead was convicted by a jury of robbery, and with one enhancement of a prior offense his punishment was assessed at fifty years imprisonment. We affirm.

On December 29, 1981, just prior to closing the store, a clerk at a Town & Country Store in Monahans was robbed by a black male who required that she place the money from a cash register in a Crown Royal sack. Shortly thereafter, the sheriff of Ward County picked up the Appellant at a cafe and questioned him about the robbery. They drove to the house where Appellant said he lived. The sheriff found a Crown Royal bag and some money behind a couch in the house. He also found a cowboy hat at the house which the robber allegedly wore at the time of the robbery. The sheriff took the Appellant, the bag and money and hat to the police station. He then returned to the house and found a knife under the couch. Shortly after the Appellant was taken to the police station, he was identified by the two clerks from the store as the person who had committed the robbery.

The first ground of error raises an issue as to the State's compliance with the Speedy Trial Act. The original record reflects that Appellant was arrested on December 30, 1981, and reindicted on March 5, 1982. On July 30, 1982, defense counsel filed a motion to set aside the indictment for failure to comply with the Speedy Trial Act. The motion was overruled after the *State* announced ready on August 3, 1982, and the case proceeded to trial the next day. The court's ruling on the motion followed a conference at the bench between the court and counsel for the State and the defendant. The record is silent as to what was presented to or considered by the court.

After Appellant's brief was filed in this Court, the State filed a motion for a supplemental record in the trial court for a hearing to make the record speak the truth as provided for in Tex.Code Crim.Pro. art. 40.-09(7). The court set the motion for hearing eight days later and at that hearing, over Appellant's objection that the trial court had lost jurisdiction of the case, permitted the State to develop certain matters not shown by the record as originally filed in this case. The supplemental record shows that Appellant was originally indicted on January 15, 1982. The court ordered a psychiatric examination ten days later. On February 22, 1982, the State filed its announcement of ready for trial. On March 5, 1982, Appellant was reindicted with no change in the offense charged, but the second indictment included two prior offenses for enhancement purposes. The psychiatrist reported on May 13, 1982, that Appellant was competent to stand trial.

■ First, we note our agreement with the holding in *Jones v. State*, 644 S.W.2d 546 (Tex.App.—Dallas 1982), *PDRR*, 646 S.W.2d 449 (1983). We conclude that the trial court had a right under Tex.Code Crim.Pro. art. 40.09(7) to hold a hearing to make the record speak the truth, and Tex. Code Crim.Pro. art. 44.11 does not prohibit the exercise of that right. We note that the Texas Court of Criminal Appeals has both approved and disapproved the trial court's approval of a supplemental transcript prepared to have the record speak the truth after the trial court has lost jurisdiction of the case. *Davis v. State*, 499 S.W.2d 303 (Tex.Crim.App.1973) and *Lynch v. State*, 502 S.W.2d 740 (Tex.Crim.App. 1973). *Also see: Schroeder v. State*, 543 S.W.2d 382 (Tex.Crim.App.1976); *Guzman v. State*, 521 S.W.2d 267 (Tex.Crim.App. 1975).

In this age of enlightenment when in both civil and criminal cases discovery is practically unlimited and cases are no longer tried by ambush, we believe cases should be disposed of in the light of the actual occurrences in the trial court. There is no question but that the supplemental record does speak the truth and counsel for the Appellant had a week's notice prior to the hearing to develop those facts. Perhaps the district attorney should have filed his motion to have the record speak the truth in this Court once the trial court had lost jurisdiction of the case, and undoubtedly this Court could then have ordered an additional hearing in the trial court. Tex. Code Crim.Pro. art. 40.09(7). Since we conclude that we could still order such a hearing even now upon our own motion, we accept the supplemental record as prepared rather than indulging in a wasteful use of judicial time by ordering the trial court to conduct another hearing, at which the same exhibits and same testimony would be received, and have that record filed with us. If we could not now by our own order cure what may have been an original error by the trial court conducting such hearing without a proper order from this Court, then a different question would be presented.

This Court has previously held that an announcement of ready by the State to an original indictment carries forward to a subsequent indictment which does not change the offense but only has changes which affect the punishment in the case. *Wilson v. State*, 633 S.W.2d 952 (Tex.App. —El Paso 1982). In that case, we said:

Bearing in mind the primary purpose of the Speedy Trial Act, as announced in *Barfield*, the relationship between the primary charge and the enhancement allegations is critical in assessing the consequences of reindictment. The habitual offender statute does not create an offense. It merely provides a more severe punishment for repeated criminal behavior. *Porier v. State*, 591 S.W.2d 482 (Tex.Crim.App.1979). The enhancement allegations are not substantive elements of the primary offense charged. They are a guide for the court or the jury in assessing punishment. *Passmore v. State*, 544 S.W.2d 399 (Tex.Cr.App.1976). Therefore, Appellant's right to a speedy trial related to the primary offense of attempted burglary. This charge was not changed in the reindictment, and the State's original announcement of ready as to this allegation carries forward through the second indictment to the time of trial. The record reveals a situation in which the usual non-prosecutorial delays afforded the State an opportunity to enhance the punishment aspect of its case. We do not interpret the Speedy Trial Act to prohibit this opportunism.

In the present case, there was no change in the primary offense on reindictment. The reindictment was not the cause for the delay in the case coming to trial. The primary delay was the necessity for a determination as to competency to stand trial. That period of time is excluded from the time within which the State must be ready for trial. Tex.Code Crim.Pro. art. 32A.02, sec. 4(1).

Even if we should hold that the supplemental record is not properly before us, we would reach the same results. The burden is on the party attacking the trial court's ruling to show error, and where the record is silent, a presumption of regularity of the trial judge's ruling must prevail. *Jones v. State*, 646 S.W.2d 449 (Tex.Crim. App.1983). Ground of Error No. One is overruled.

Appellant contends in Ground of Error No. Two that the trial court erred in failing to suppress certain evidence located at the house where he lived. After going to the address where Appellant finally said he lived, the sheriff went to the door and Willie Summers, who also lived there, let the sheriff into the house. Summers testified he paid all the utilities but no rent. He said Appellant slept on a couch in the living room. At that time, the sheriff found a Crown Royal bag, some money and a cowboy hat. He later returned and upon further search found a knife or fish scaler.

One of the specifically established exceptions to the requirement of both a warrant and probable cause for a search is a search conducted pursuant to consent. *Swink v. State*, 617 S.W.2d 203 (Tex.Crim. App.1981). The consent must be shown to be positive and unequivocal and the burden is upon the State to show by clear and convincing evidence that the consent was freely and voluntarily given. Where two persons have equal rights to the use or occupancy of the premises, either may give consent to a search and the evidence disclosed can be used against either person. *Williams v. State*, 502 S.W.2d 130 (Tex. Crim.App.1973); *Powers v. State*, 459 S.W.2d 847 (Tex.Crim.App.1970).

In this case, the Appellant contends that consent was not voluntary. Summers testified on cross-examination that Keele was wearing a badge and a gun when he came to the door. However, on direct examination, he testified that Keele did not force himself in the house or threaten him and that when the sheriff inquired if he could look around that Summers told him he could. The evidence establishes a voluntary consent to search. Ground of Error No. Two is overruled.

It is asserted in the next ground of error that the trial court erred in refusing to charge the jury on the law of consentual search as requested by the Appellant. Tex.Code Crim.Pro. art. 38.23 provides:

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

In the case at bar, Keele testified that Summers gave him permission to enter the house and look around. Summers confirmed that such consent was given. Counsel for Appellant did not call any witnesses to contest the consent issue, nor did the Appellant offer any evidence going to the question of consent. Although the terms of Article 38.23 are mandatory and require the giving of a proper instruction where the evidence raises an issue ·of fact on consentual search, the court is not required to submit the issue to the jury where there is no fact issue raised. The court properly refused the requested charge. *Rose v. State*, 470 S.W.2d 198 (Tex.Crim.App.1971). Ground of Error No. Three is overruled.

We now turn to the issue of the in-court identification of Appellant by the two convenience store clerks. They testified the Appellant was in the store during the afternoon preceding the robbery for about four hours playing video games, watching children play the games and making some small purchases. He came back to the store near closing time wearing overalls and a cowboy hat. At that time, he sought to purchase some nail clippers and after one of the clerks obtained the nail clippers, he walked up behind her at the cash register and pressed a knife to her demanding that she put the money from the register into a Crown Royal bag. He directed the other clerk to stand near the front of the store. Immediately after he left, the clerks reported the robbery to the police. Within an hour or so, the clerks were taken by a police officer to the police station and on the way he told them that they thought they had the robber. The witnesses were taken to a room with a one-way mirror where they witnessed the suspect, an elderly black, in a room with a white officer. One of the clerks identified the Appellant immediately and the other clerk viewed him for about ten minutes before making a positive identification. Appellant now contends this was an impermissible suggestive show-up because he was the only black in the room from which an identification was to be made.

Prior to trial, the Appellant requested and obtained a physical lineup of four black males in the courtroom. Each of the store clerks separately identified the Appellant as the robber.

Although one person show-ups are widely condemned, the admission of identification testimony does not violate due pro-

cess so long as the identification possesses sufficient aspects of reliability. The totality of the circumstances must be reviewed and the court should consider (1) the opportunity to view, (2) the degree of attention, (3) the accuracy of the description, (4) the witnesses' certainty, and (5) the time between the crime and the confrontation. *Garza v. State,* 633 S.W.2d 508 (Tex.Crim. App.1981).

 In this case, the length of time between the robbery and the show-up was less than two hours. Both witnesses had had an opportunity to view the Appellant for a considerable length of time during the afternoon prior to the robbery. Following the robbery, they gave an accurate description of the Appellant including the fact that he appeared to have an infection in one eye. The reliability of their identification was reconfirmed by the in-court identification in a lineup of four black males. We conclude that the original show-up procedure by which the witnesses identified the single black male at the police station was not such as to result in a very substantial likelihood of irreparable misidentification. *Garza v. State, supra.* Ground of Error No. Four is overruled.

 The Appellant next contends the trial court erred in overruling his motion for instructed verdict. In view of our determination that the evidence obtained in the search by the sheriff was properly admitted and that the in-court identifications were admissible, the evidence was sufficient for the case to go to the jury. Ground of Error No. Five is overruled.

 The Appellant complains in the last two grounds of error about the trial court's instruction to the jury after they advised the court they could not reach a verdict after deliberating a little over two hours. At that time, the court gave additional instructions along the lines of those which have been commonly referred to as the "dynamite" or "Allen" charge. *Travelers Insurance Company v. Stevens,* 553 S.W.2d 232 (Tex.Civ.App.—Houston [14th Dist.] 1977). This type of instruction has

been approved in both civil and criminal cases. *Stevens v. Travelers Insurance Company,* 563 S.W.2d 223 (Tex.1978); *Arrevalo v. State,* 489 S.W.2d 569 (Tex.Crim. App.1973); *Boyd v. State,* 644 S.W.2d 857 (Tex.App.—Tyler 1982); *Love v. State,* 627 S.W.2d 457 (Tex.App.—Houston [1st Dist.] 1981). Certainly the trial court's instructions should not be of an oppressive type which mandates some type of verdict. It should not single out jurors with a particular opinion for criticism. In this case, the jury had deliberated a relatively short period of time when they first advised the trial court that they could not reach a verdict. In asking for additional deliberations, the court instructed them to reexamine their positions and determine that their opinions were based upon evidence, but the court also told them that no individual should yield his own conscience and positive conviction about the case. Finding no error in the instruction, Grounds of Error Nos. Six and Seven are overruled.

The judgment of the trial court is affirmed.