COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

ANTHONY CHARLES ARNOLD,                     )

                                                                              )               No.  08-01-00298-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
238th District Court

THE STATE OF TEXAS,                                     )

                                                                              )          
of Midland County, Texas

Appellee.                           )

                                                                              )                 
(TC# CR-26,194)

                                                                              )

 

 

O
P I N I O N

 

Anthony Charles
Arnold was originally indicted for aggravated sexual assault and aggravated
kidnapping.  Enhanced charges were later
sought on two prior charges for possession of cocaine with intent to distribute
and Appellant was re-indicted.  Appellant
pled true to the enhancement paragraphs. 
The jury found him guilty and the judge sentenced him to life
imprisonment in the Texas Department of Criminal Justice.  Appellant now brings six issues in this
appeal.  We affirm.

The victim, C.K.
went with friends to a Midland bar called The Ranch.  They had a few beers on the way and more at
the bar.  Appellant approached C.K. and
her friends and introduced himself as T-bone. 
He offered them cocaine, and tried to get them to dance with him.  The women  tried to ignore him.








About 12:30 a.m.,
C.K. went outside to get fresh air and her cigarettes from the car.  As she walked to the car, Appellant grabbed
her from behind and dragged her to his car. 
C.K. was intoxicated and unable to forcefully resist.

As they drove away
from the bar, Appellant reached into his backseat and threw some type of powder
into her face that burned her mouth and nose. 
She later realized it was detergent. 
When the car slowed on a dark road, C.K. jumped out and tried to run
away.  Appellant chased her down, and
tackled her into the bar ditch along the road. 
Appellant sexually assaulted C.K., but was unable to maintain an
erection and never ejaculated.  Frustrated,
Appellant said his name was Craig, ran back to his car and drove away.

C.K. walked to a
nearby house and, at about 1:45 a.m., the police were called.  Other officers were dispatched to the Ranch
bar, after C.K.=s
friends reported that she was missing. 
Two of her friends accompanied the officers to the house where C.K. was
being questioned.        C.K. told the police how she was abducted
and raped.  She described her assaillant as a black male, 5'10" in height, heavy set,
wearing a white or light colored shirt, khaki shorts, a light colored (golf
style) straw hat, and said that the name he gave her at the bar was
T-Bone.  She described his car as a dark
colored Geo Metro hatchback.  








A radio dispatch
of the assailant=s
nickname and description was monitored by an officer who recognized the
name.  The name AT-Bone,@
was on a list they maintained in their vehicles.  They went to Appellant=s
house to question him.  Appellant
answered the door in shorts and no shirt. 
A tattoo of Appellant=s
nickname, T-Bone, was visible on his back. 
He said that he had been at the bar, the Ranch that evening.  He said that he only been home for about
thirty minutes before the police arrived. 
Appellant became argumentative so he was handcuffed and placed in the
backseat of one of the police vehicles. 
The officers continued to talk with Appellant=s
wife at the residence while other officers went to obtain a search
warrant.  

C.K. was driven to
Appellant=s
house.  She immediately recognized the
car in Appellant=s
driveway as the car in which she had been abducted.  Appellant was taken out of the police car and
stood up in front of the headlights.  The
officers had Appellant speak so that C.K. could hear his voice.  She immediately identified him as her
assailant.  Appellant was placed under
arrest.

After Appellant
was arrested, his car was impounded. 
Fingerprints were taken and photos were made of Appellant=s vehicle.  A box of laundry detergent and a CD were
found in the backseat of the vehicle. 
C.K.=s
fingerprints were discovered on the front windshield of Appellant=s car. 
A few days later, her watch was found where she was assaulted.

Cliff Hardwick was
appointed as Appellant=s
counsel.  Teresa Clingman
was the assistant District Attorney on the case.  Ms. Clingman
originally made a written plea bargain offer of twenty-five years.  It was negotiated down to fifteen years.  A week later, Ms. Clingman
learned that Appellant had prior felony offenses and a prior sexual assault
arrest so she retracted the plea offer of fifteen years.  After seeking enhanced charges, she made
another plea bargain offer of forty years. 
Mr. Hardwick was later removed from the case and  the court appointed John Roosa and Raymond Fivecoat.

Appellant=s first four issues assert that his
pretrial attorney and his trial attorney both provided ineffective assistance
of counsel.  We will address all four
points together.  

Standard
of Review








The proper
standard for determining claims of ineffective assistance under the Sixth
Amendment is the two‑step analysis adopted by the United States Supreme
Court in Strickland v. Washington.[1]  See Hernandez v. State, 988 S.W.2d 770, 771‑72 (Tex.Crim.App.
1999).  Under the first prong, the
defendant must show that counsel=s
performance was deficient, to the extent that counsel failed to function as the
Acounsel@
guaranteed by the Sixth Amendment.  Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App.
1994).  The defendant must
demonstrate that his attorney=s
representation fell below an objective standard of reasonableness under
prevailing professional norms.  Vasquez v. State, 830 S.W.2d 948, 949 (Tex.Crim.App.
1992).  Under the second prong,
the defendant must establish that counsel=s
deficient performance prejudiced the defense. 
Strickland, 466 U.S. at 687, 104 S.Ct.
at 2064, 80 L.Ed.2d at 693; Jackson, 877 S.W.2d
at 771.  Prejudice is established by a
showing that there is a reasonable probability that but for counsel=s unprofessional errors,
the result of the proceeding would have been different.   Strickland, 466
U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson,
877 S.W.2d at 771; Hernandez v. State, 726 S.W.2d 53, 55 (Tex.Crim.App. 1986). 
A reasonable probability is a probability sufficient to undermine
confidence in the outcome.  Strickland,
466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson, 877 S.W.2d at 771.








Under the Strickland
test, the appellant bears the burden of proving ineffective assistance by a
preponderance of the evidence.  Jackson, 877 S.W.2d at 771; Calderon v. State, 950
S.W.2d 121, 126 (Tex.App.‑-El Paso 1997, no
pet.).  Allegations of
ineffectiveness of counsel must be firmly founded in the record.  Hawkins v. State,
660 S.W.2d 65, 75 (Tex.Crim.App. 1983); Calderon,
950 S.W.2d at 126.  When a claim
of ineffective assistance of trial counsel is reviewed by this Court, we must
indulge a strong presumption that counsel=s
conduct falls within the wide range of reasonable, professional assistance and
the appellant must overcome the presumption that the challenged conduct can be
considered sound trial strategy.  Jackson,
877 S.W.2d at 771; Calderon, 950 S.W.2d at 126.

Appellant first
argues he received ineffective assistance of counsel from his pretrial counsel,
Cliff Hardwick, because he failed to advise him of either the twenty-five-year
or 

fifteen-year
plea offers made by the State on the original indictment.  Appellant claims that if he had known about
the deal he would have accepted the offer. 
Where defense counsel has failed to inform a criminal defendant of plea
offers made by the State, the defendant is prejudiced by the missed opportunity
of accepting such bargain and presenting it to the trial court for
consideration in sentencing.  Ex parte Lemke, 13 S.W.3d 791, 796
(Tex.Crim.App. 2000).  Where the defendant has been prejudiced by
counsel=s failure
to convey a plea bargain offer, the appropriate remedy is to reinstate the
original offer.  Id. at 798. The State may, however,
demonstrate that intervening circumstances have so changed the factual premises
of its original offer that with just cause, it would have modified or withdrawn
its offer prior to its expiration date.  Id.

The record clearly
reflects an intervening and evolving knowledge of Appellant=s criminal history that changed the
factual premises of its original plea offer of twenty-five years.   The original plea offers were withdrawn with
just cause.  See Ex parte Lemke, 13 S.W.3d at 796.   Appellant has failed to show that counsel=s performance was deficient or that the
results of the proceedings would have been different.  We overrule Issue One.








Appellant next
complains that trial counsel failed to cross-examine two witnesses.  The State called Glenda Hyatt as the first
punishment witness.  She testified that
Appellant sexually assaulted her 1997, in a similar manner to the facts of this
case.  Appellant was found guilty in that
case for the offense of sexual assault and theft.  The State next called Detective Sheldon
Johnson, who investigated the Hyatt sexual assault.  He testified as to that investigation.  

The record does
not show why trial counsel did not cross-examine either witness.  Yet, it is well settled that the decision of
whether to cross‑examine a witness is a matter of trial strategy.  Valdes‑Fuerte v. State, 892 S.W.2d 103, 111 (Tex.App.--San Antonio 1994, no pet.).  Appellant has simply not overcome the strong
presumption of counsel=s
competence.  Thompson
v. State, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).  Moreover, Appellant has failed to demonstrate
prejudice resulting from the lack of cross‑examination.  He has not shown what evidence would have
come before the jury as a result of such inquiries, whether that evidence would
have affected Hyatt=s or the
detective=s
credibility, or that the result of the proceedings would have been
different.  Id.
at 812.  We overrule Issue Two.

Appellant also
complains that trial counsel was ineffective for not objecting to the 

in-court
identification of Appellant and for failure to renew Appellant=s motion to suppress the pretrial
identification.  Appellant also argues
that his counsel was ineffective for failing to object to the pretrial
identification because the identification was tainted and was unduly
suggestive.  We set aside a conviction
based on an in‑court identification only when
the in‑court identification was the result of a pretrial identification
procedure that was so impermissibly suggestive as to give rise to a substantial
likelihood of irreparable misidentification. 
See Conner v. State, 67 S.W.3d 192, 200 (Tex.Crim.App. 2001); Wilson v. State, 15 S.W.3d 544,
552 (Tex.App.--Dallas 1999, pet. ref=d).  We evaluate whether the pretrial procedure
fatally tainted the in‑court identification by reviewing the totality of
the surrounding circumstances.  Conner, 67 S.W.3d at 200; Jackson v. State, 657
S.W.2d 123, 127 (Tex.Crim.App. 1983); Wilson,
15 S.W.3d at 552.








The Texas Court of
Criminal Appeals has outlined five nonexclusive factors that should be weighed
against the corrupting effect of any suggestive identification procedures in
assessing reliability under the totality of the circumstances:  (1) the opportunity of the witness to view
the criminal at the time of the crime; (2) the witness=s
degree of attention; (3) the accuracy of the witness=s
prior description of the criminal; (4) the level of certainty demonstrated by
the witness at the confrontation; and (5) the length of time between the crime
and the confrontation.  Loserth
v. State, 963 S.W.2d 770, 772 (Tex.Crim.App.
1998); Wallace v. State, 75 S.W.3d 576, 585 (Tex.App.--Texarkana
2002), aff=d,
2003 W.L. 21884324 (Tex.Crim.App. 2003).  A[I]f
the totality of the circumstances reveals no substantial likelihood of
misidentification despite a suggestive pretrial procedure, subsequent
identification testimony will be deemed >reliable= . . . .@  Webb v. State, 760
S.W.2d 263, 269 (Tex.Crim.App. 1988).

The evidence shows
that in her 911 call, C.K. described the suspect as a black male, in his
twenties, about 5'9" to 5'10" tall, heavy set, muscular, wearing a
white or light colored 

T-shirt, Khaki
shorts, and a straw golfer=s
hat.  The nickname T-Bone was
given in the description.  The vehicle
description was a dark colored Geo Metro hatchback.  The officers had a list of nicknames provided
by the Investigative Service Bureau in their vehicles that they used to
determine that T-Bone was a name often used by Appellant.  The date of birth and the description of the
suspect on their list matched the description given by C.K.  

Less than an hour
after C.K. was sexually assaulted, the officers arrived at Appellant=s house.  A green Geo Metro hatchback was parked in the
driveway at Appellant=s
home.  The hood of the vehicle still felt
warm to the touch.








About two-hours
after the sexual assault, C.K. was driven to the Appellant=s house.  She immediately recognized the car in the
driveway as the one used by the Appellant, and she recognized the Appellant as
the man who abducted and sexually assaulted her.  

C.K. had ample
time to view her attacker before and during the commission of the crime.  She had been approached by him at the bar, she was pulled by him into his car, and then sexually
assaulted by him.  Though she was
intoxicated, there was no evidence that she was so intoxicated that she lacked
the mental faculties to identify the Appellant. 
She was able to give police a detailed description of Appellant=s car, his clothing, his race, his
height, his age, and physique.   C.K. was
also able to identify Appellant at trial. 
Therefore, examining the totality of the circumstances, we do not
believe that the pretrial identification procedure was impermissibly suggestive
or that there was a very substantial likelihood of misidentification.  Wallace, 75 S.W.3d
at 584.  Accordingly, we hold
Appellant=s counsel
did not render ineffective assistance by failing to object to C.K.=s
in-court identification or in choosing not to renew Appellant=s motion to suppress the pretrial
identification of Appellant.  We overrule
Issue Three.








Finally, Appellant
contends that trial counsel was ineffective in waiving objections preserved by
the pretrial motion to suppress evidence. 
He argues his counsel=s
failure to make an objection during trial amounted to ineffective
assistance.  The pretrial motion
requested the suppression of all evidence seized as a result of the detention
of Appellant at his residence, any statement made by Appellant, and any
evidence seized as a result of the search warrant issued for the search of
Appellant=s
vehicle.  Appellant argues that no
objections were made when the following were introduced:  C.K.=s fingerprints on Appellant=s vehicle; the photographs of the box
of Cheer laundry detergent that was in the backseat of Appellant=s vehicle; the khaki shorts seized from
Appellant=s
residence; and the straw golf hats seized from the residence.  Appellant concedes that the only real issue
was whether the evidence seized was beyond the scope of the warrant.

After Appellant
was arrested, his vehicle was impounded. 
A search warrant was obtained for both the house and the vehicle.  After making a lawful arrest, an officer may
search a suspect=s vehicle
for the purpose of taking an inventory.  Colorado v. Bertine, 479 U.S. 367,
371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); Stephen
v. State, 677 S.W.2d 42, 44 (Tex.Crim.App. 1984);
Backer v. State, 656 S.W.2d 463, 464 (Tex.Crim.App.
1983).  Impoundment of a vehicle
is proper when the vehicle has been used in the commission of a crime.  Lagaite v. State, 995 S.W.2d 860, 865 (Tex.App.--Houston
[1st Dist.] 1999, pet. ref=d).

Because the search
warrant included the Appellant=s
vehicle and items concealed within and the vehicle was impounded after
Appellant=s arrest
and it was used in the commission of the crime, we find that Appellant=s argument that the search of the car
went beyond the scope of the warrant is without merit.  Therefore, we conclude that there was no
ineffective assistance of counsel by not objecting to such evidence
presented.  We overrule Issue Four.

Pretrial
Identification

With his fifth
issue, Appellant argues the pretrial identification was unnecessarily
suggestive or conducive to irreparable misidentification and should have been
suppressed.  See Stovall v. Denno, 388 U.S. 293, 87 S.Ct.
1967, 18 L.Ed.2d 1199 (1967); Garza v. State, 633 S.W.2d 508, 512 (Tex.Crim.App. 1982)(Opin. on reh=g).








An on-the-scene
identification possesses a degree of suggestiveness, and under certain
circumstances may amount to a denial of due process.  Garza, 633 S.W.2d at
512.  However, the admission of
evidence of a one person show-up, without more, does not violate due
process.  Id. On appeal, we
examine the totality of the circumstances in any case to determine if due
process has been violated.  Garza, 633 S.W.2d at 512-13; Armstead
v. State, 677 S.W.2d 266, 270-71 (Tex.App.--El
Paso 1984), pet. ref=d, 692 S.W.2d 99 (Tex.Crim.App. 1985). 
The key factors used in considering the circumstances include:  (1) the witness=s
opportunity to view; (2) the witness=s
degree of attention; (3) the accuracy of the description; (4) the witness=s level of certainty; and (5) the time
between the crime and the confrontation. 
Id.  

Based on the
evidence presented, we cannot say that the procedure used in this case was
impermissibly suggestive.  The victim,
C.K., was able to clearly view Appellant before the crime occurred, during the
sexual assault and kidnapping, and at the show-up.  Her description of Appellant before the
show-up was detailed, as was her description of the vehicle.  There was no uncertainty in C.K.=s
identification of Appellant.  The time
that elapsed between crime and confrontation was only approximately one
hour.  All of these factors support the
trial court=s
conclusion that C.K.=s
identification of Appellant was not unduly suggestive.  No error is shown.  We overrule Appellant=s
fifth issue

The
Re-Indictment

In Issue Six,
Appellant contends that the court erred in failing to set aside the 

re-indictment,
dismiss the prosecution, and order him to be discharged.  The presentment of the indictment was made on
September 7, 2000.  The re-indictment was
made on April 5, 2001.  On April 11,
2001, Appellant filed a motion to set aside the indictment.  He alleged that the 

re-indictment
was issued in violation of Tex.Code Crim.Proc.Ann.
art. 32.01 and was a due
process violation.  All of theses motions
were denied by the trial court.  Tex.Code Crim.Proc.Ann.
art. 32.01 (Vernon Supp. 2003).








If a prosecution
of a defendant is dismissed under Article 32.01, the defendant may be
rearrested for the same criminal conduct alleged in the dismissed prosecution
only upon presentation of indictment or information for the offense and the issuance
of a capias subsequent to the indictment or
information.  See Tex.Code Crim.Proc.Ann.
art. 15.14 (Vernon Supp. 2003).  In addition, the Texas Court of Criminal
Appeals has recently held that Article 32.01 is not applicable once an
indictment or re-indictment has been returned. 
Brooks v. State, 990 S.W.2d 278, 285 (Tex.Crim.App.
1999); citing Tatum v. State, 505 S.W.2d 548, 550 (Tex.Crim.App.
1974); Smith v. State, 998 S.W.2d 683, 694 (Tex.App.--Corpus
Christi 1999, pet. ref=d).  Since Appellant was already indicted, his
contention under this final point of error must fail.  We find that the court was proper in its
denial of these motions, that Article 32.01 has no application after the
re-indictment was presented.  Issue Six
is overruled.

Having overruled
all six issues on appeal, we affirm.

 

 

June
27, 2003

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.

 

(Do Not Publish)











[1]
466 U.S. 668, 104 S.Ct. 2052, 80
L.Ed.2d 674 (1984).