Opinion issued December 6, 2007











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00575-CR






MARIO ALBERTO GONZALEZ, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 268th District Court

Fort Bend County, Texas

Trial Court Cause No. 42,643






MEMORANDUM OPINION

 A jury convicted appellant, Mario Alberto Gonzalez, of aggravated assault, and
the court assessed punishment at five years in prison. See Tex. Penal Code Ann.
§§ 22.01(a)(2), 22.02(a)(2) (Vernon Supp. 2007). In three issues, appellant
challenges the trial court's denial of his motions to suppress evidence (a) obtained
after his detention and (b) of the complainant's initial identification of him, and the
legal and factual sufficiency of the evidence.

 We affirm.

Background


 Around 5:30 a.m. on July 18, 2005, Aurora Pina answered a knock on her door. 
Her three children, aged two to nine, were in the living room watching television just
behind the front door. When Pina opened the door, a man she had never seen before
grabbed her right wrist, held a knife to her stomach, and tried to force his way in. 
Pina testified that he took a step inside her apartment, but she managed to push him
outside and close and lock the door. Pina testified that she saw his face "directly in
front of my face, about nine inches to twelve inches away from mine" and that she
had enough lighting inside and outside her apartment to see him clearly. She testified
at trial that she specifically remembered his eyes, saying, "There was just something
about his eyes . . . that was the first thing I saw was his eyes, and I can remember for
some reason." In addition, she testified that he had short hair, that she smelled
alcohol on him, and that she could not understand him because he spoke in Spanish. 
She said that he was inside her apartment for about fifteen seconds, but she felt
threatened and afraid, especially after she saw the knife. Pina testified that she
immediately called 9-1-1. She described her attacker as a Hispanic man with short
hair, between 5'3" and 5'5", wearing denim jeans, a dark tee shirt with lettering on the
front and back, and a baseball cap. She testified that she was attacked with a knife
with a silver, three or four inch blade, but she did not see the handle because it was
covered by her attacker's hand.

 Within about five minutes of her 9-1-1 call, Officer Hooper, with the
Rosenberg Police Department, arrived at Pina's apartment, ascertained that she did
not need medical attention, and initiated his investigation.

 Meanwhile, Sergeant Jose Nieto was patrolling downtown Rosenberg at the
time of Pina's attack. He was about 400 yards from her apartment, near the post
office, a funeral home, and a discount store. He spotted appellant walking alone, and,
because he was aware of prior crimes in the area, Sgt. Nieto stopped to speak with
appellant. Appellant, a Hispanic man with short hair, between 5'3" and 5'5" tall, was
wearing dark pants, a dark tee shirt with lettering on the front and back, and a dark
baseball cap when Sgt. Nieto stopped him. Sgt. Nieto asked appellant for his name,
birth date, and address, and Sgt. Nieto testified later that appellant cooperated and
answered his questions. Sgt. Nieto spoke to appellant in both English and Spanish. 

 Within seconds of stopping to speak to appellant, Sgt. Nieto heard dispatchers
relay the information about Pina's attack, including her description of her attacker
and the fact that he was armed with a knife. Sgt. Nieto noticed that appellant closely
matched the suspect's description. In addition, Sgt. Nieto had noticed that appellant
appeared to be grasping with his right hand something tucked inside his pants, near
the waistband. Sgt. Nieto testified that such behavior aroused his suspicion and that,
given the description of the suspect he heard on the radio, he then had reason to
detain appellant. He also testified that there were no other Hispanic men wearing
similar clothing in the area when he stopped Gonzalez.

 Sgt. Nieto grabbed Gonzalez's wrist and a silver, one-piece knife fell from his
pant leg. Sgt. Nieto pushed appellant back, picked up the knife, handcuffed
appellant, and called Officer Hooper to let him know he had stopped a man meeting
the description of the suspect. Sgt. Nieto then drove appellant to a location across the
street from Pina's apartment. They arrived approximately ten or fifteen minutes after
Pina's 9-1-1 call for a "show-up" identification.

 Officer Hooper led Pina outside where she stood across the street and looked
at appellant. Appellant was standing beside the patrol car, illuminated by the patrol
car's headlights and spotlight. Although appellant was still handcuffed, both Officer
Hooper and Pina testified that they did not remember seeing him handcuffed or did
not see handcuffs. Pina immediately identified appellant, gasping, "That's him." She
confirmed her identification while appellant slowly turned in a circle as she and
Officer Hooper watched from about 25 feet away. 

 After the show-up identification, Officer Guerrero arrived, and he took
appellant to the Rosenberg City Jail, where he was booked and later moved to the
Fort Bend County jail.

 Appellant was charged with burglary of a habitation with intent to commit an
aggravated assault. At trial, he testified that he lived near downtown Rosenberg, and
because he did not have a car, he walked everywhere. He said that he worked as a
laborer for a cement company and that someone (a coworker or his boss) would pick
him up every morning that it did not rain to go to work at various locations. He
testified that he was picked up for work at 5:00 a.m., but he also testified that he had
no regular schedule. He said that he was near the post office that morning because
he had just called his family in Mexico from a pay phone and was going home to
change his clothes for work. He testified that he used a calling card, but because no
time remained on the card, he left it at the pay phone. He said that he had a knife with
him because he used it for work and also because it was the custom in his hometown
of Guanajuato, Mexico to carry a knife. He said he normally carried it in a leather
pocket while at work, but he insisted it was safe to carry it without the pocket that
morning. Although he admitted a prior theft conviction, he denied attacking Pina,
and he testified he had never been to her apartment. 

 However, at trial, Pina identified appellant as her attacker, and she identified
the clothes he was wearing when he was arrested as the same clothes worn by the man
who attacked her.

 After the jury convicted him of the lesser-included offense of aggravated
assault, appellant changed his election to have the jury assess punishment. The trial
court sentenced him to five years' imprisonment, and appellant appealed. On appeal, 

appellant argues that: (1) his arrest was unconstitutional because he was detained
without reasonable suspicion or probable cause; (2) the show-up identification was
impermissibly suggestive and should have been suppressed; and (3) without evidence
of his arrest and the show-up identification, the evidence was legally and factually
insufficient.

Motions to Suppress


 We review a trial court's ruling on a motion to suppress evidence for an abuse
of discretion. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). We
will afford almost total deference to a trial court's determination of historical facts. 
Id. If the trial court did not make explicit findings of historical facts, we will review
the evidence in a light most favorable to the trial court's ruling and assume that the
trial court made implicit findings of fact as supported by the record. Id. We review
a trial court's application of search and seizure law de novo. Id.

Stop and Detention

 In his first issue, appellant challenges the trial court's denial of his motion to
suppress evidence of his stop and detention by Sgt. Nieto. A police officer may
approach an individual in public and ask questions without any specific justification. 
State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002); Pennywell v. State, 127
S.W.3d 149, 152 (Tex. App.--Houston [1st Dist.] 2003, no writ). During such an
encounter, the individual is free to leave or to refuse to answer the officer's questions. 
Pennywell, 127 S.W.3d at 152. However, an encounter may become a detention when
the officer's actions would communicate to a reasonable person that he was not free
to refuse the officer's requests or otherwise terminate the interaction. Id. An officer
may conduct such a brief investigative detention, or "Terry stop," when he has a
reasonable suspicion to believe that an individual is involved in criminal activity. 
Balentine, 71 S.W.3d at 768 (citing Terry v. Ohio, 392 U.S. 1, 21, 88 S. Ct. 1868,
1881 (1968)). The reasonableness of a temporary detention must be examined in
terms of the totality of the circumstances and will be justified when the detaining
officer has specific articulable facts, which, taken together with rational inferences
from those facts, lead him to conclude that the person detained actually is, has been,
or soon will be engaged in criminal activity. Id.; Woods v. State, 956 S.W.2d 33, 35
(Tex. Crim. App. 1997).

 At the pretrial hearing on appellant's motions to suppress, Sgt. Nieto testified
that he initially stopped appellant to ask him why he was walking in that area at that
time in the morning because several crimes had been committed there in the prior two
years. Sgt. Nieto testified that appellant was not under arrest and was free to decline
to answer his questions and continue walking. While talking to appellant, Sgt. Nieto
heard over his police radio the description of a suspect who had attempted to enter an
apartment and was possibly armed with a knife. Sgt. Nieto testified that he believed
appellant matched the description, and, furthermore, he had noticed that appellant
appeared to be grasping something beneath his clothes, at waist level. Sgt. Nieto
testified that appellant did not respond when asked what he was holding, so Sgt.
Nieto reached for appellant's wrist and a knife fell out from the bottom of appellant's
pant leg. 

 By the time Sgt. Nieto reached for appellant's wrist, he had specific articulable
facts that supported his belief that appellant had engaged in criminal activity:
appellant matched the description of the suspect broadcast over the police radio,
appellant appeared to be grasping something hidden beneath his clothes, and
appellant was near the apartment where the crime had been committed just minutes
earlier.

 Appellant argues, in part, that his detention was illegal because, although he
immediately identified himself, Sgt. Nieto did not let him leave immediately. In
Pennywell, we held that there was no evidence, nor any inference from any evidence,
to suggest that the defendant was not free to decline to answer an officer's questions
and, therefore, the interaction was no more than an encounter. Pennywell, 127
S.W.3d at 152. The defendant sought to suppress evidence of stolen property, found
after a police officer stopped to ask him questions as he left the apartment complex
where he had committed the crime. Id. The police officer asked the defendant if he
lived in the apartment complex and whom he was visiting. Id. Here, the record
shows that appellant cooperated with Sgt. Nieto in answering questions and that Sgt.
Nieto almost immediately developed reasonable suspicion to detain appellant. As in
Pennywell, there is no evidence, nor any inference from any evidence, to suggest that
appellant was not free to decline to answer Sgt. Nieto's questions about his name and
birthdate. Accordingly, this interaction was no more than an encounter. See id. We hold that the trial court did not err in denying his motion to suppress
evidence obtained as a result of Sgt. Nieto's stop and detention of appellant. We
overrule appellant's first issue. (1)

Show-Up Identification

 In his second issue, appellant challenges the trial court's denial of his motion
to suppress evidence of the show-up identification. When faced with a challenge to
an out-of-court identification, a trial court should review all of the circumstances
surrounding the identification and determine whether a procedure was unduly
suggestive and, if so, whether it was conducive to an irreparable mistaken
identification such that it denied the defendant due process of law. Webb v. State,
760 S.W.2d 263, 272 (Tex. Crim. App. 1988). 

 First, the trial court should examine whether the identification procedure was
impermissibly suggestive. Barley v. State, 906 S.W.2d 27, 33-4 (Tex. Crim. App.
1995). One man "show-up" identifications are generally considered suggestive;
however, a one man show-up, without more, does not necessarily violate due process:

 While it must be conceded that an on-the-scene confrontation has some
degree of suggestiveness, in many situations its use is necessary. First
of all by viewing the alleged perpetrator of the offense immediately after
the commission of the offense, the witness is allowed to test his
recollection while his memory is still fresh and accurate. Additionally
the quick confirmation or denial of identification expedites the release
of innocent suspects. Thus the innocent suspect need not be transported
to jail and detained until a lineup can be constructed. Furthermore the
police would be able to release the innocent suspect and continue their
search for the criminal while he is still within the area and before the
criminal can substantially alter his looks and dispose of evidence of the
crime. Finally, any possible prejudice resulting from such a
confrontation can be exposed by rigorous cross-examination of the
witness.


Garza v. State, 633 S.W.2d 508, 512 (Tex. Crim. App. 1982) (citations omitted).

 If the trial court determines that an out-of-court identification was
impermissibly suggestive, then the court should consider the factors enumerated in
Neil v. Biggers to determine whether the suggestive procedure created a substantial
likelihood of irreparable misidentification. 409 U.S. 188, 199-200, 93 S. Ct. 375,
382-83 (1972). A defendant bears the burden to show both impermissible suggestion
and a substantial likelihood of misidentification by clear and convincing evidence. 
See Barley, 906 S.W.2d at 33-4. The Texas Court of Criminal Appeals has held that
five nonexclusive Biggers factors should be "weighed against the corrupting effect
of any suggestive identification procedure in assessing reliability under the totality
of the circumstances." Loserth, 963 S.W.2d 770, 772 (Tex. Crim. App. 1998) (citing
Biggers, 409 U.S. at 199, 93 S. Ct. at 382-83). These factors include: (1) the
opportunity of the witness to view the criminal at the time of the crime; (2) the
witness's degree of attention; (3) the accuracy of the witness's prior description of the
criminal; (4) the level of certainty demonstrated by the witness at the confrontation;
and (5) the length of time between the crime and the confrontation. Id.

 Each of the individual Biggers factors involves historical facts, and we review
the facts deferentially, in a light most favorable to the trial court's ruling. Id. at 773.
The application of these factors is a mixed question of law and fact that does not turn
on the credibility of the witnesses. Id. We thus review the trial court's application
of the factors de novo. Id. at 773-74.

 Assuming, without deciding, that the show-up identification was impermissibly
suggestive, after applying the Biggers factors, we conclude that the show-up
identification in this case was not conducive to a very substantial likelihood of
irreparable misidentification. First, the evidence showed that, at the time of the
assault, Pina viewed appellant from about nine to twelve inches away, face to face,
for thirty seconds in adequate light. Given the nature of the assault, Pina's attention
was focused directly on appellant during the crime. In addition, Pina provided an
accurate description of her attacker as a 5'3" to 5'5" tall Hispanic man, with short hair,
wearing dark pants, a dark tee shirt with lettering on both sides, and a baseball cap,
who spoke Spanish, smelled of alcohol, and was armed with a knife with a
three-to-four inch long silver blade. When apprehended, appellant, a 5'3" to 5'5" tall
Hispanic man with short hair, was wearing dark pants, a dark tee shirt with lettering
on both sides, and a baseball cap. He spoke to Sgt. Nieto in Spanish, and he smelled
of alcohol. Sgt. Nieto found a knife with a three-to-four inch silver blade on
appellant. Pina was certain of her identification at the time, gasping, "That's him,"
when she got her first glance of him from the breezeway of her apartment, as Officer
Hooper led her outside to see appellant. She reiterated her certainty as she watched
appellant turn in a circle, illuminated by the police car's lights. Finally, the
identification occurred no more than fifteen minutes after the assault. 

 We further conclude that the show-up identification was not so "corruptive"
as to outweigh the factors supporting the identification. Nothing in the record shows
that the detaining officers encouraged Pina by word or action to identify appellant as
her attacker. Thus, we hold that, under the totality of the circumstances in the instant
case, appellant has not shown by clear and convincing evidence that there was a very
substantial likelihood of irreparable misidentification. Accordingly, we hold further
that the trial court did not abuse its discretion in denying appellant's motion to
suppress evidence of the complainant's initial identification of appellant.

 We overrule appellant's second issue.

Legal Sufficiency 

 In evaluating the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Va., 443 U.S. 307, 318-19, 99 S. Ct. 2781, 2788-89 (1979); Vodochodsky
v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). When evaluating the legal
sufficiency of the evidence we look at all the evidence, whether properly or
improperly admitted. Bobo v. State, 843 S.W.2d 572, 575-76 (Tex. Crim. App.
1992). We note that the trier of fact is the sole judge of the weight and credibility of
the evidence. Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). 
Thus, when performing a legal sufficiency review, we may not re-evaluate the weight
and credibility of the evidence and substitute our judgment for that of the fact finder.
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any
inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).

 Here, appellant was convicted of aggravated assault. A person commits
aggravated assault if the person intentionally or knowingly causes physical contact
with another when the person knows or should reasonably believe that the other will
regard the contact as offensive or provocative and uses or exhibits a deadly weapon
during the commission of the assault. Tex. Penal Code Ann. §§ 22.01(a)(2),
22.02(a)(2). Pina testified that appellant grabbed her wrist and held a knife to her
stomach. Sgt. Nieto testified that he had seen serious bodily injuries and fatalities
from similar knives. Pina identified appellant within fifteen minutes of the crime, and
she again identified him in open court. We conclude that a rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky, 158 S.W.3d at 509. 

 We overrule appellant's legal sufficiency issue.

Factual Sufficiency

 When conducting a factual sufficiency review, we view all of the evidence in
a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
"clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury's resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury's verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury's verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

 We may not re-weigh the evidence and substitute our judgment for that of the
fact finder. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The fact-finder alone determines what weight to place on contradictory testimonial evidence
because that determination depends on the fact finder's evaluation of credibility and
demeanor. Cain, 958 S.W.2d at 408-09. As the determiner of the credibility of the
witnesses, the fact finder may choose to believe all, some, or none of the testimony
presented. Id. at 407 n.5. 

 As noted, Pina positively identified appellant in open court, as well as on the
day of the crime. Appellant argues, however, that the evidence was factually
insufficient because he testified that: (1) he lived in the neighborhood, (2) he was
returning home after making a telephone call, (3) he carried a knife for work, and (4)
he did not attack Pina. Here, the jury alone determined what weight to give
appellant's testimony and whether or not to believe it at all. We conclude that the
evidence is not so weak that the verdict is clearly wrong and manifestly unjust, nor
is the verdict against the great weight and preponderance of the evidence. Johnson,
23 S.W.3d at 11.

 We overrule appellant's factual sufficiency issue.

CONCLUSION

 We affirm the judgment of the trial court.



 Sam Nuchia

 Justice


Panel consists of Justices Nuchia, Jennings, and Keyes.


Do not publish. Tex. R. App. P. 47.2(b). 
1. 
 
" " 
 
 
 
 " " 
 -- 
-- 
 " "