Affirmed and Memorandum Opinion
filed January 27, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-09-00698-CR



Jesse Warren
Ivey, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 232nd District Court

Harris County, Texas

Trial Court
Cause No. 1170304



 

MEMORANDUM OPINION 

Appellant Jesse Warren Ivey appeals his conviction
for aggravated robbery, claiming the evidence is factually insufficient to
support his conviction and that the trial court reversibly erred in overruling
appellant’s motion to suppress identification.  We affirm.

Factual and Procedural
Background

Police officers were dispatched to an apartment
complex to investigate a call regarding an aggravated robbery.  The officers
learned from the complainant, Marino Rosales, that while he and two friends,
Hosea Morales and Herman Aguilar, were in the apartment complex parking lot, a
tan-colored Impala automobile approached.  As the vehicle neared, one of its five
occupants inquired whether Rosales “had a staring problem.”  According to Rosales,
three men exited the vehicle and donned bandanas over their faces.  One of the
men wore a purple Los Angeles Lakers jersey and red shoes; this man pointed a
gun at Morales and demanded money and jewelry and then demanded the same from Aguilar.
 A man with a “funky” eyebrow, wearing a white shirt and white baseball cap,
approached Rosales with a gun and demanded money and jewelry.  Two other men,
one of whom Rosales recognized as a schoolmate, remained in the vehicle.  The
men returned to the vehicle when Rosales and his friends refused to hand over
money and valuables.  As they drove away, the men fired shots from the vehicle.


A tow-truck driver witnessed the events and observed
the Impala exit the apartment complex parking lot.  He saw gunfire coming from
the passenger-side rear window, where a man in a baseball hat fired a revolver
out of the window toward the apartment complex.  The tow-truck driver called
authorities and reported the vehicle’s license plate number.  He followed the
Impala and was able to see the driver, the front seat passenger, and a rear passenger
who wore a baseball hat.

Officers later located the Impala in a driveway of a nearby
residence.  The officers noted that the hood of the vehicle was warm to the
touch and observed live ammunition rounds in the back seat.  The officers
located appellant in one bedroom of the home, pretending to be sleeping even
though he was fully clothed.  Appellant was wearing a purple and yellow Los
Angeles Lakers jersey and red athletic shoes; he was perspiring.  Officers
located two other men who were pretending to be asleep even though they were
fully clothed, and one man hiding in a bathtub.  Officers located a fifth
person, who wore a white baseball cap and a white shirt, hiding on the roof of
the home.  

Officers brought Rosales and his friends to the
residence to view the five individuals detained.  They identified four of them,
including appellant, as the men they had encountered in the parking lot.  The
tow-truck driver arrived at the residence and also identified three of the men
as the ones he saw in the Impala.  At trial, the tow-truck driver could not
positively identify appellant as one of the individuals he identified on the
night of the incident.

Appellant was charged by indictment with the felony
offense of aggravated robbery.  Before trial, appellant filed a motion to
suppress the complainant’s identification of him.  The trial court denied
appellant’s motion to suppress.

At trial, appellant testified that he did not
participate in the robbery because he was outside the residence smoking when he
saw the Impala pull into the driveway.  The occupants of the vehicle urged him
to move inside the home; there, appellant saw the occupants with two guns. 
Appellant claimed he was smoking marijuana when he saw police officers arrive at
the residence and that he panicked and went inside.  

The jury found appellant guilty of the charged
offense and assessed punishment at ten years’ confinement.

Sufficiency of the Evidence

Appellant claims in his second issue that the
evidence is factually insufficient to support the jury’s verdict. While this
case was pending on appeal, a majority of the judges of the Texas Court of
Criminal Appeals determined that “the Jackson v. Virginia legal-sufficiency
standard is the only standard that a reviewing court should apply in
determining whether the evidence is sufficient to support each element of a criminal
offense that the State is required to prove beyond a reasonable doubt.”  Brooks
v. State, 323 S.W.3d 893, 894 (Tex. Crim. App. Oct. 6, 2010) (plurality
op.) (Hervey, J., joined by Keller, P.J., Keasler, and Cochran, JJ.); id. at
914–15 (Cochran, J., concurring, joined by Womack, J.) (same conclusion as
plurality).[1] 
Therefore, in this case we will review the evidence under the standard set out
in Jackson v. Virginia. 

In evaluating a sufficiency challenge, we view the
evidence in the light most favorable to the verdict.  Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not whether
we, as a court, believe the State’s evidence or believe that appellant’s
evidence outweighs the State’s evidence.  Wicker v. State, 667 S.W.2d
137, 143 (Tex. Crim. App. 1984).  The verdict may not be overturned unless it
is irrational or unsupported by proof beyond a reasonable doubt.  Matson v.
State, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).  The trier of fact “is
the sole judge of the credibility of the witnesses and of the strength of the
evidence.”  Fuentes v. State, 991 S.W.2d 267, 271 (Tex. Crim. App.
1999).  The trier of fact may choose to believe or disbelieve any portion of
the witnesses’ testimony.  Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986).  When faced with conflicting evidence, we presume the trier
of fact resolved conflicts in favor of the prevailing party.  Turro v. State,
867 S.W.2d 43, 47 (Tex. Crim. App. 1993).  Therefore, if any rational trier of
fact could have found the essential elements of the crime beyond a reasonable
doubt, we must affirm.  McDuff v. State, 939 S.W.2d 607, 614 (Tex. Crim.
App. 1997).

A
person commits the offense of robbery if, in the course of committing theft and
with the intent to obtain and maintain control of property, that person “(1)
intentionally, knowingly, or recklessly causes bodily injury to another; or (2)
intentionally or knowingly threatens or places another in fear of imminent
bodily injury or death.”  Tex. Penal
Code Ann. § 29.02 (West 2003).  The offense becomes aggravated robbery
if the person committing the robbery uses or exhibits a deadly weapon.  Id. §
29.03(a)(2) (West 2003).  

Rosales testified that he feared for his life by the assailants’
use of guns when they demanded money and jewelry from the group.  Rosales described
one of the assailants as a man wearing a purple athletic jersey and red shoes who
held a gun to Rosales’ friends’ heads.  The tow-truck driver who observed the
events reported the Impala’s license plate number to authorities.  Officers
located the vehicle at a nearby residence; the hood of the vehicle was still
warm, and officers could see live ammunition in the backseat of the vehicle.  Officers
located appellant inside the residence, pretending to be asleep; appellant was
wearing clothing that matched the description of the clothing worn by one of
the occupants of the Impala.  

At the residence where the Impala was located, Rosales
identified appellant as one of the assailants.  Additionally, in court, Rosales
positively identified appellant as one of the assailants he encountered in the
parking lot.[2] 
The testimony of a single eyewitness is sufficient to support a felony
conviction for aggravated robbery.  See Johnson v. State, 176 S.W.3d 74,
77–78 (Tex. App.—Houston [1st Dist.] 2004, pet. ref’d) (holding that evidence
was legally sufficient to support conviction for aggravated robbery based on a
complainant’s testimony and identification).  Therefore, a rational trier of
fact could have found the elements beyond a reasonable doubt.  See id.
at 77.

Appellant claims that Rosales’s identification of him
was based solely on his clothing and that Rosales was unable to identify him in
court.  Contrary to appellant’s claim, Rosales made a positive, in-court
identification of appellant as one of the occupants of the Impala.  Although
Rosales testified he could not remember appellant’s exact conduct, Rosales
testified about the conduct of the assailant who wore the purple sports jersey. 
Officers testified that after they detained appellant, who was clad in attire that
matched Rosales’s description of the clothing worn by one of the assailants,
Rosales identified appellant at the residence as one of the individuals in the
Impala.  Rosales testified that he identified appellant because he remembered
appellant from the incident and from identifying him at the residence where the
Impala was found.  Evidence as to the identity of an accused may be proven
through direct or circumstantial evidence.  Earls v. State, 707 S.W.2d
82, 85 (Tex. Crim. App. 1986) (concluding evidence sufficient to support
conviction based on testimony by a complainant who identified perpetrator by
clothing).  

Appellant points out that all of the assailants wore
bandanas from the cheekbone down and that Rosales had only a limited
opportunity to observe appellant.  Even if Rosales was unable to view
appellant’s facial features and even if his identification of appellant was
less than certain, these matters go toward the weight of the evidence and not
to its admissibility.  See Garza v. State, 633 S.W.2d 508, 513 (Tex.
Crim. App. 1982) (involving witnesses who were unable to observe accused’s
face, but were able to see clothing and general physical characteristics).  Appellant
also points to the fact that the tow-truck driver was unable to identify
appellant in court because he could not remember; according to the record, the
tow-truck driver saw only three people in the Impala.  The jury, as sole
fact-finder, could determine the credibility of witnesses’ testimony and decide
the weight to be given to testimony.  See Garza, 633 S.W.2d at 514
(concerning witnesses’ identification of accused).  

Appellant also points to the testimony of his
girlfriend and grandmother in support of his claims that he did not commit the
charged offense, because he was in their presence at times close to when the
offense was alleged to have occurred.  Alibi evidence is just one factor for
the jury’s consideration, and an evaluation of such evidence turns on
credibility and demeanor.  See Johnson, 167 S.W.3d at 78; Davis v.
State, 831 S.W.2d 839, 842 (Tex. App.—Dallas 1992, pet. ref’d).  Thus, the jury
was free to accept or reject appellant’s alibi evidence.  See Vasquez v.
State, 67 S.W.3d 229, 236–39 (Tex. Crim. App. 2002); Johnson, 176
S.W.3d at 78.  We will not disturb the jury’s determination.

Because a rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt, the evidence is
sufficient to support appellant’s conviction for aggravated robbery.  See
Vasquez, 67 S.W.3d at 238–39.  Therefore, we overrule appellant’s second
issue challenging the sufficiency of the evidence.

Suppression of Identification Evidence

In his first issue, appellant claims the trial court
reversibly erred in overruling his motion to suppress the complainant’s
pretrial identification of him.  According to appellant, the procedure in which
the complainant identified him was impermissibly suggestive because the
complainant and his friends were in a patrol unit together and could hear one
another discuss the identification, and this exchange served to reinforce any
identification.  

We review a trial court’s ruling on a motion to
suppress evidence under a bifurcated standard of review.  Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  At a suppression hearing,
the trial court is the sole finder of fact and is free to believe or disbelieve
any or all of the evidence presented.  Wiede v. State, 214 S.W.3d 17, 24
(Tex. Crim. App. 2007).  We give almost total deference to the trial court’s
determination of historical facts that depend on credibility and demeanor, but
review de novo the trial court’s application of the law to the facts as
resolution of those ultimate questions does not turn on the evaluation of
credibility and demeanor.  See Guzman, 955 S.W.2d at 89.  When, as in
this case, there are no written findings of fact in the record, we uphold the
ruling on any theory of law applicable to the case and presume the trial court
made implicit findings of fact in support of its ruling so long as those
findings are supported by the record.  State v. Ross, 32 S.W.3d 853,
855–56 (Tex. Crim. App. 2000).  We view a trial court’s ruling on a motion to
suppress in the light most favorable to the trial court’s ruling.  Wiede,
214 S.W.3d at 24.  If supported by the record, a trial court’s ruling on a
motion to suppress will not be overturned.  Mount v. State, 217 S.W.3d
716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.). 

An in-court identification is inadmissible if it has
been tainted by an impermissibly suggestive pretrial identification procedure. 
Ibarra v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999).  We
consider, under the totality of circumstances, whether the pretrial
identification procedure was so impermissibly suggestive as to give rise to a
very substantial likelihood of irreparable misidentification.  See Luna v.
State, 268 S.W.3d 594, 605 (Tex. Crim. App. 2008).  Because
admissibility of identification testimony hinges on reliability, for the
in-court identification to be inadmissible, appellant must prove by clear and
convincing evidence that the in-court identification was unreliable.  See id. 
If the indicia of reliability outweigh the influence of an impermissibly
suggestive pretrial identification, in-court identification testimony is
admissible.  Id. at 608.  

For purposes of our analysis, we presume that the
on-scene identification procedure was impermissibly suggestive, and we turn to
the second step of the analysis to determine whether this procedure rendered
the in-court identification unreliable under the totality of the circumstances.
 In conducting this analysis, we must weigh the corrupting effect of the
impermissibly suggestive on-scene identification procedure against the
following factors to determine whether the in-court identification is
admissible:

(1)  The witness’s opportunity to
view the perpetrator at the time of the crime;

(2)  The witness’s degree of
attention;

(3)  The accuracy of the
witness’s prior description of the perpetrator;

(4)  The level of witness
certainty at the time of the confrontation; and

(5)  The lapse of time between
the alleged act and time of confrontation.

Ibarra, 11 S.W.3d at
195. 

            The evidence
adduced at the suppression hearing, when viewed in the light most favorable to
the trial court’s ruling, shows the following:

·       
Rosales and his two friends gave detailed descriptions of their
assailants to responding officers.  The descriptions were the same.  

·       
Near the crime scene, officers located the vehicle as identified
by the color, model, and license plate number given to officers.  Appellant,
wearing the same clothing as described by Rosales to officers, was found in the
immediate vicinity—inside the home where the assailants’ vehicle was parked. 

·       
Within one hour of the initial police response at the crime
scene, officers brought Rosales and his friends to the residence to view
appellant and others detained there.  The tow-truck driver also arrived at the
residence to view the people who were detained.  

·       
While Rosales and his friends remained in the back of the patrol
unit,[3]
other officers lined up the five individuals detained from the residence and shined
a spotlight on them; appellant was wearing a purple sports jersey and red
athletic shoes.  Within five minutes, Rosales and his friends positively
identified him as one of the men they encountered in the parking lot. According
to the officer, neither Rosales nor his friends seemed hesitant in their
identification of appellant.  All three of them were positive in their
identification of appellant, and had a high level of certainty.  

·       
According to the testimony from Rosales, the tow-truck driver,
and the officer who conducted the on-scene identification, the officer did not
suggest to the witnesses that they were to identify anyone or that the people
detained committed any offense.  When Rosales, Morales, and Aguilar identified
appellant, the officers cautioned them to be truthful and indicated that they
did not have to make any identification.  

·       
Rosales testified that he identified appellant based on what he
remembered from the incident.  

Rosales had an opportunity to view the assailants at
the time of the robbery and provided detailed descriptions of the perpetrators
to the officers.  The descriptions, when measured against the individuals he
later identified as the assailants (including appellant), proved very accurate.
 Furthermore, these precise and accurate descriptions of the assailants suggest
he had a high degree of attention during the incident.  Moreover, he
demonstrated a high level of certainty at the time of the on-scene
identification.  Finally, the lapse of time between the act and the time of the
confrontation was only about an hour, which strongly suggests that Rosales’s
memory was fresh and his ability to recall and identify were optimal. 

Weighing this strong evidence of reliability against
what we presume for purposes of analysis was the unduly suggestive nature of
the on-scene identification procedure, we conclude that no substantial risk of
irreparable misidentification was created so as to deny appellant due process.  See
Santos v. State, 116 S.W.3d 752, 757 (Tex. App.—Houston [14th Dist.] 1992,
pet. ref’d) (holding that identification procedure did not create substantial
risk of irreparable misidentification).  Under the totality of circumstances,
the on-scene identification procedure did not render the in-court
identification unreliable.  Accordingly, we conclude that the trial court did
not abuse its discretion by denying appellant’s motion to suppress.  We
overrule appellant’s first issue.

The trial court’s judgment is affirmed.

                                                                                    

                                                                        /s/        Kem
Thompson Frost

                                                                                    Justice

 

 

 

Panel consists of Justices Anderson, Frost, and Brown.

Do Not Publish — Tex. R. App. P. 47.2(b).









[1]
Nonetheless, this does not alter the constitutional authority of the
intermediate courts of appeals to evaluate and rule on questions of fact.  See
Tex. Const. art. V, § 6(a)
(“[T]he decision of [courts of appeals] shall be conclusive on all questions of
fact brought before them on appeal or error.”).

 





[2]
In his first issue, which we address below, appellant argues that the procedure
by which the complainants identified appellant was impermissibly suggestive. 
However, in a sufficiency review, a reviewing court must consider all evidence,
whether properly or improperly admitted at trial, that the jury was permitted
to consider.  Moff v. State, 131 S.W.3d 485, 488, 489 (Tex. Crim. App.
2004).





[3] Although appellant asserts that the witnesses could
have collaborated in their identifications, no evidence suggests that the men did
so.  In fact, Rosales denied speaking with his friends about the descriptions
of the assailants or the identification of appellant.  The officer denied
hearing Rosales or his friends discussing anything during the identification
procedure.